ROBESON, BLACK & CO. v. HUNTER.

(*Jackson.*   May 7, 1891.)

1. JUDICIAL ATTACHMENT.   *Defense by plea in abatement.*

Judicial attachment may be abated upon plea denying the truth of the officer's return of summons "not to be found in my county," upon which the attachment was issued.

Code construed: §4207 (M. & V.); §3466 (T. & S.).

2. SAME.   *Same.   Example of a good plea.*

And a plea in abatement for this purpose is sufficient which contains a formal denial of the truth of the officer's return, with an explanatory statement in addition, to the effect that defendant had, at the institution of the suit and attachment, long been, was then, and has ever since been a citizen and resident of the county in which the suit was brought, being there engaged, during all that time, in conducting, in the usual public manner, a mercantile business; that on Saturday night he left his home to visit his wife, who was temporarily absent at her father's, in the State of Kentucky, intending to return on the following Monday; that he did in fact return on Tuesday morning before regular business hours; that he was only temporarily absent for said purpose, and not for the purpose of concealing himself or evading service of process; and that process was issued and returned, and the attachment issued, on Monday during his temporary absence.

Code construed: §4207 (M. & V.); §3466 (T. & S.).

Cases cited: Slatton *v.* Johnson, 4 Hay., 200; Welch *v.* Robinson, 10 Hum., 264; James *v.* Hall, 1 Swan, 297; Carlisle v. Cowan, 85 Tenn., 165.

3. SAME.   *Same.   Essentials to validity of return of process "not to be found."*

Officer's return of summons "not to be found in my county" is insufficient to support a judicial attachment against the defendant's property, where the truth of the return is put in issue by plea in abatement, if the proof in support of the plea shows that the summons was taken out during a short, temporary absence of the defendant

Robeson, Black & Co. *v.* Hunter.

from the State for a lawful purpose; and that the officer, after holding the process "two or three hours," returned it "not to be found in my county," having during that time inquired at several places for defendant, including his residence and place of business, and received the information that defendant had gone to Kentucky, but would return "in a day or two." In such case the officer has not exercised that "degree of diligence exceeding that which a prudent man employs in his own affairs," required by law as a prerequisite to a valid return of *non est inventus.*

Code construed: §§4868, Subsecs. 5, 7 (M. & V.); §4093, Subsecs. 5, 7 (T. & S.).

### FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

L. & E. LEHMAN for Robeson, Black & Co.

GANTT & PATTERSON for Hunter.

CALDWELL, J. This suit was, commenced by Robson, Black & Co. against R. L. Hunter, before a Justice of the Peace of Shelby County, on an account for $160; both parties being merchants and doing business in the city of Memphis at the time.

The summons by which the suit was commenced, was returned the same day issued, indorsed as follows:

"Came to hand fourth day of August, 1890,

and after diligent search R. L. Hunter is not to be found in my county.

"A. J. McLendon, *Sheriff*,

"By C. T. Smith, *D. S.*"

Based on that return, the plaintiffs, on the same day, sued out a judicial attachment, and caused it to be levied on a portion of the defendant's stock of goods. Thereafter the defendant appeared and filed a plea in abatement to the attachment. This plea was sustained and the attachment quashed by the Justice of the Peace; whereupon the plaintiffs appealed to the Circuit Court. In the latter Court they made a motion to strike out the plea as insufficient in law. This motion was overruled, and the case was tried by Court and jury on an issue as to the truth of the plea. Verdict and judgment were rendered for the defendant, and plaintiffs appealed in error to this Court.

The first assignment of error is upon the refusal of the Circuit Judge to strike out the plea in abatement. That plea is in these words: "For plea to the attachment in this case, defendant, R. L. Hunter, says that he was, at the time of the issuance of the warrant in this case, and at the time of the issuance of the judicial attachment in the same, a citizen and resident of the county of Shelby, and still is such, and had been long prior to the beginning of this suit; that he had not concealed himself so that the ordinary process of the law could not be served on him, nor was he then doing so; nor had he left the county, or done

any act to prevent the service of the warrant in this case. On the contrary, on Saturday night, August 2, 1890, he left the city of Memphis, on the Louisville Railroad, to spend a day with his wife, who was paying a visit to her father at Providence, Kentucky, intending to return on the following Monday, and [he] left * * * the home of his wife's father at 12 o'clock on Monday, and reached Memphis on Tuesday morning, August 5, before 8 o'clock A.M. His absence was merely temporary, and he was actually out of the city of Memphis but one business day, and during that day his business house on Main · Street was open, and so remained until the attachment in this case was levied. He says it is not true that he was not to be found in Shelby County, as returned and indorsed on said summons or warrant, but was then on his way to Memphis, which place he reached, by the Louisville and Nashville Railroad, as above stated, before business hours, on the fifth of August, 1890, and was openly and publicly in the city of Memphis, attending to his business in said city, both before and after the issuance of said summons and said attachment writ, and did no act whatever with intent to evade the service of the ordinary process of the law. So he says it is not true that he was not to be found in Shelby County, as alleged in said return."

Briefly stated, the contention of learned counsel for plaintiffs is that this plea, while· *in terms denying* the truth of the Sheriff's return, *in legal*

*effect admits* its correctness by conceding that the defendant was, in fact, out of the county on the day mentioned; and that the defendant's confessed absence from the county, *for whatever cause*, on the day search was made for him, and the officer's return of *non est inventus*, are conclusive of the Magistrate's jurisdiction to issue the attachment.

On the other hand, the position taken in the plea, when summarized, is that the defendant's absence from the county must have been *for the purpose* of avoiding service of the ordinary process, otherwise the return thereof would not justify resort to attachment; and that such not having been the reason for the absence, the return made is false and the attachment unauthorized.

The contention for plaintiffs has the merit of being both plausible and in accord with the strict literalism of the statute; nevertheless, we think the only safe and proper construction is that suggested by the plea.

The law authorizing judicial attachment, and that on the construction of which this case depends, had its origin in the Acts of 1794, Ch. 1, Sec. 17 (1 Scott's Laws of Tennessee, p. 462); and, as codified, its language is as follows: "In any civil action, when the summons has been returned 'Not to be found in my county,' as to all or any one of the defendants, residents of the county, the plaintiff may have an *alias* and *pluries* summons for the defendant; or, at his election, sue

Robeson, Black & Co. *v.* Hunter.

out an attachment against the estate of such defendant." Code, § 3466.

Though the statute distinctly defines the *return* that will authorize the plaintiff to sue out an attachment, it does not state what facts will justify the executive officer in making such return. The significant language of the prescribed return implies, however, that the officer has been diligent, and done *all. that could reasonably have been done*, or that *might yet reasonably be done*, to serve the process; and that, with all this, the defendant was not to be found in his county.

It was not a sufficient warrant for the return that the defendant could not be found in the county at any given time, or on any particular day, as in the present case.

The officer must have been to the defendant's residence, his place of business—if he have such—and elsewhere in search of him; and, not finding him, must have made inquiry as to his whereabouts, the reason of his absence, and its probable duration.

If it turn out upon such investigation, or at any stage of it, that the defendant is absconding from the county, or concealing himself in the county, to evade service of the summons, then the officer may truthfully indorse upon the process that the defendant is not to be found in his county. On the other hand, if he learn, or if the fact be that the defendant is temporarily out of the county, in good faith, a return of *non est*

*inventus* will not be justified; and if made on
such insufficient ground, it is false, and will not
authorize an attachment. It cannot be truthfully
said that a person only temporarily out of the
county is not to be found in the county; for, if
his absence is temporary, he will return, and after
that he may be found.

One provision of the general statutes as . to the
duty of a Sheriff requires him "to go to the house
or place of abode of every defendant against whom
he has process in his hands, before returning on
the same that the defendant is not to be found"
(Code, § 4093, Subsec. 5; *Ib.*, § 365); and another
requires him "to use, in the execution of process,
a degree of diligence exceeding that which a pru-
dent man employes in his own affairs." Code,
§ 4093, Subsec. 7.

Certainly no "prudent man" desiring to collect
his debt would desist from the effort, and con-
clude that his debtor was not to be found, merely
because absent from the county on a particular
day when he might call to demand payment; nor
would a private agent, intrusted with the collec-
tion of a debt, be accounted a "prudent man" if
he should abandon the undertaking for the reason
that he failed to find the debtor the first time he
called at his residence or place of business. Still
more is required of a Sheriff. "In the execution
of process," he must exercise "a degree of dili-
gence *exceeding* that which a prudent man employs
in his own affairs."

The same conclusion follows from another line of reasoning. It has been seen that the judicial attachment originated with the Acts of 1794, Ch. 1, Sec. 17. The right of original attachment was given by the nineteenth section of the same enactment. 1 Scott's Laws of Tennessee, p. 462; Code, § 3455, Subsecs. 3, 4, 5.

The writs of attachment thus authorized, whether judicial or original, are *extraordinary* process, intended alike to coerce the defendant's appearance when the *ordinary* process of law cannot be served upon him.

Original attachment issues upon the plaintiff's affidavit that his debtor has removed or is removing privately from the county, or that he so absconds or conceals himself that the ordinary process of law cannot be served upon him. Judicial attachment issues on the *return* of the ordinary process indorsed " not to be found in my county." The *return* in the one case performs the same office as the *affidavit* in the other. Each is the foundation of the extraordinary process, which issues in the one case, as in the other, to enforce the appearance of the fraudulent debtor by a seizure of his property.

These analogies between the two remedies, created by the same Act, make it manifest that the Assembly intended that the return of *non est inventus* here contemplated, should be made alone upon facts the same or similar to those to be recited in the affidavit. The truth of the affidavit

may be put in issue by plea in abatement in the one case, and, for the same reason, the sufficiency of. the facts on which the return is made may be denied in the same way in the other case.

It is clear to our minds that the facts averred in the plea in abatement in this case constitute a good defense to the attachment. A different construction of the statute would be ruinous in its results. The view advocated by the plaintiffs in this case would render the property of every debtor in the State subject to, seizure by attachment whenever he might, from motives of business or pleasure, go out of the county of his residence for a single day. Such a consequence could not have been within the legislative intent.

Though this statute is almost a century old, and has several times heretofore been before this Court, in one aspect and another, for construction, we have treated the precise question raised by the plea in abatement as *res integra*, being now presented as a question for decision the first time. But, since counsel in this case rely on certain language of the Court in some of the cases heretofore decided to sustain their respective views of the present question, a brief review of those cases will be made in chronological order.

In *Slatton* v. *Johnson*, 4 Hay., 200, the Court said: "*Non est inventus* implies that the residence of the defendant is in the county, and that the Sheriff has been at his place of abode; and, if these are not facts, the return is a false one, and

subjects the Sheriff to an action for a false return. He should return the truth of the case, either that the defendant is not an inhabitant of that county or that he resides in another, specifying it."

In that case no intimation is made as to the importance to be given the defendant's absence from the county when the Sheriff calls at his place of abode and makes his return; hence, what is there said has no bearing on the question involved in this case.

In *Welch* v. *Robinson*, 10 Hum., 264, the return was that the defendant was *not found* in the county, not that he was *not to be found*. That return was held to be insufficient to ground a judicial attachment upon, because the Sheriff might truthfully have made it without going out of his office to seek the defendant.

In the opinion the Court, *arguendo*, said: "The language of the statute clearly imports that after diligent inquiry and search by the Sheriff, at the usual residence of the defendant and elsewhere, he is not to be found, *being actually absent from the county*, or having concealed himself so as to evade the service of process." *Ib.*, 266.

That language is favorable to the contention of plaintiffs in the present case, in that it seems in general terms to make either the *absence* of the defendant from the county *or* his *evasion* of the Sheriff sufficient reason for the prescribed return. But, since that question was not raised in the

case, as has already been seen, that expression of the Court is not entitled to the full weight of an adjudication. Moreover, it will be observed that even the language used does not go to the extent of declaring that *any absence* from the county, for whatever reason, will suffice; and it will not be assumed that the Court intended to express such a view.

True, there is no qualification of the statement that the *actual absence* of the defendant from the county will justify the return "not to be found;" yet it is at least probable, from language used in the next case to be noticed (the same learned Judge having delivered the opinion in each case), that only such absence as evinced a purpose to evade the service of process was contemplated.

In *James* v. *Hall*, 1 Swan, 297, the defendant filed a plea in abatement, averring that he was not a citizen of the State *when the attachment was sued out.* This plea was held to be bad, on demurrer, because it did not also aver that the defendant was a non-resident *when the suit was commenced.*

After holding the plea to be insufficient, for the reason stated, the Court, in construing the statute authorizing judicial attachments, said: "This provision implies that defendant is an inhabitant of this State at the time of the institution of the suit, and that his residence is in the county in which the suit may have been commenced, and that *he evades the service of process.* In such case

a judicial attachment may issue against his estate in order to coerce his appearance." *Ib.*, 298.

Here is support for the insistence of defendant in the present case, in that the Court said the statute itself *implies* that the defendant, against whom judicial attachment may issue, "evades the service of" the ordinary process of law, thereby justifying resort to extraordinary process, "in order to coerce his appearance."

The same view is further enforced by the next sentence in the opinion, which is: "It cannot be of the slightest importance, in view of this remedy, in what way, or by what artifice, *the service of process is evaded* by the defendant—whether by concealment in the county of his residence or in a different county, or by a change of residence to another State." *Ib.*, 298, 299.

Though not the point in judgment, the same construction was placed upon the statute in *Carlisle* v. *Cowan*, 1 Pickle, 165. In that case Judge Lurton, speaking for the Court, said: "The return, 'not to be found in my county,' implies that the defendant is a resident of the county; and the failure of the Sheriff to find him implies that *he is evading process.*" *Ib.*, 167.

The plea in the present case being good in law, the action of the trial Judge in overruling motion to strike it out was correct, and the assignment of error based upon that action is not well taken. Whether the plea was true in fact is yet to be considered. The jury tried that issue and

found it for the defendant. Their verdict is con-
clusive in this Court, there being *some material
evidence* to support it. Indeed, there is not only
*some* material evidence to support the verdict in
favor of the truth of the plea, but it is supported
by the great preponderance, and, in fact, nearly
all, of the material evidence in the record. In
no event, under the facts disclosed, could the
plaintiffs sustain their attachment.

The evidence of the officer who returned the
summons and levied the attachment in itself is
sufficient to sustain the verdict; and, besides that,
it furnishes a striking illustration of the ease and
celerity with which an innocent debtor may, with-
out his knowledge, be put on a level before the
law with a fraudulent debtor, and have his prop-
erty attached and business impaired or ruined in
a few hours if the construction contended for by
the plaintiffs should be adopted by the Courts.

He says he received the original summons in the
afternoon, and kept it only "about two or three
hours" before making his return; that, in this
time, he made inquiry for the defendant "at sev-
eral different places," his residence and his place
of business among them; that he was told by a
young man at the desk in defendant's store that
he (the young man) thought defendant "had gone
to Nashville or Kentucky, and he thought he
would return in a day or two."

Though this officer seems to have had no mo-
tive except to discharge his duty promptly and

well, it is manifest that he should have retained the process and tested the correctness of his information that the defendant "would return in a day or two." It *was not true* that the defendant was not to be found in his county. On the contrary, he *was to be found* in his county on the very next day, and for days and days thereafter, and every day up to the trial, so far as this record shows.

The other assignments of error present no ground for reversal. The matters complained of in most of them are embraced in what has already been said. The others are immaterial, and therefore need not be mentioned further.

Let the judgment be affirmed.