Lucille **MAXWELL** and Lillie **Wright**

v.

Lucille **HIXSON**, Clerk, Hamilton County General Sessions Court, et al.

**Civ. A. No. 6762.**

United States District Court,
E. D. Tennessee, S. D.

Oct. 24, 1974.

---

Howell N. Peoples, Legal Aid Society of Chattanooga, Chattanooga, Tenn., for plaintiffs.

Bart Durham, Richard S. McNeese, Asst. Attys. Gen., Nashville, Tenn., for David Pack.

Berke, Berke & Berke, Chattanooga, Tenn., for Lucille Hixson.

Walter L. Lusk, Chattanooga, Tenn., for H. Q. Evatt.

Before PHILLIPS, Chief Circuit Judge, WILSON, Chief District Judge, and NEESE, District Judge.

WILSON, Chief District Judge.

This is an action seeking to have the Tennessee Judicial Attachment and Garnishment Statutes, TCA § 23–607[1] and § 23–701,[2] declared unconstitutional as being contrary to the due process requirement of the Fourteenth Amendment. Since the statutes are of state-wide application, a three-judge court was convened pursuant to 28 U.S.C. § 2281 et seq.

The plaintiffs contend that at the time this lawsuit was initiated they were each subject to lawsuits in the General Sessions Court of Hamilton County, Tennessee, wherein judicial attachments and garnishments had issued pursuant to TCA § 23–607 and § 23–701 and their wages had been garnished without their having been given any prior notice or opportunity for a hearing, either as to the issuance of the garnishments or as to the merits of the underlying claims against them. Relying principally upon the United States Supreme Court decision in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969), they contend that the statutes purporting to authorize the garnishments are in derogation of procedural due process and are accordingly unconstitutional.

The lawsuit is before the Court upon a motion for summary judgment, the relevant facts having been stipulated in the case. With reference to the plaintiff, Mrs. Maxwell, the relevant facts are that in June of 1972 the Household Finance Corporation initiated a lawsuit in the General Sessions Court of Hamilton County, Tennessee, against her. The lawsuit alleged an indebtedness in the sum of $455.42, the debt being evidenced by a note. The civil warrant reflected upon its face that Mrs. Maxwell lived at "Route 6, Banks Road" and worked at the "State Public Health Department." However, it was never served upon Mrs. Maxwell. Rather, upon five occasions, at intervals over a period of some ten months, a deputy sheriff returned the warrant with the entry "search made and deft. not to be found in my county." Following the second such return, a

---

[1]. TCA 23–607. *Return of Summons unserved.*—In any civil action, when the summons has been returned "not to be found in my county," as to all or any one of the defendants, residents of the county, the plaintiff may have an alias and pluries summons for the defendant, or, at his election, sue out attachment against the estate of such defendant. Upon the return of the attachment levied on any property of the defendant, the cause proceeds against such defendant in all respects as if originally commenced by attachment.

[2]. TCA 23–701. *Assets subject to garnishment.*—Where property, choses in action, or effects of the debtor are in the hands of third persons, or third persons are indebted to such debtor, the attachment may be by garnishment.

judicial attachment and garnishment was issued pursuant to TCA §§ 23–607 and 23–701. This was served upon Mrs. Maxwell's employer, the Public Health Department, who reported the sum of $83.69 as being subject to the garnishment. Following additional returns to the effect that Mrs. Maxwell was "not to be found in my county," two further attachments and garnishments were issued. For reasons not apparent in the record, no answer was given upon one of these and the other was cancelled. At the time of the garnishments, Mrs. Maxwell was carrying heavy family responsibilities and was experiencing financial difficulties. Her problems in this regard were enhanced by the garnishments.

With regard to the second plaintiff, Mrs. Wright, the record reflects that she was subject to a judicial attachment and garnishment on one occasion under circumstances similar to those experienced by Mrs. Maxwell, with a result that $20.05 was paid into court by her employer upon the garnishment. Both Mrs. Maxwell and Mrs. Wright emphasize that at all relevant times they were each openly residing and employed in Hamilton County, Tennessee, and that the officer's returns upon the civil warrants were accordingly false and erroneous.[3]

In addition to the foregoing facts having reference to the plaintiffs' individual cases, certain statistics having reference to the use of judicial attachments in the General Sessions Court for Hamilton County, Tennessee, were placed in the record. Among other matters, these statistics reflect that, of 12,457 civil lawsuits in that court in 1972, judicial attachments were issued in 309 cases.

■ It is important to note at the outset that this lawsuit does not purport to assert a broad constitutional attack upon the attachment and garnishment laws of the State of Tennessee. Rather, the specific and limited purpose of the lawsuit is to place in issue the constitutionality of the Tennessee statutes providing for the issuance of *judicial* attachments (TCA § 23–607) and garnishments in aid of *judicial* attachments (TCA § 23–701). The two statutes under attack are but part of a broad statutory plan encompassing three types of attachments—original attachments, ancillary attachments, and judicial attachments (TCA § 23–601 et seq.). Each type of attachment has distinguishing features, it being sufficient for present purposes simply to state that original attachments are those by which lawsuits may be initiated and *in rem* jurisdiction acquired, ancillary attachments are those issues in the course of litigation and in aid of the enforcement of judgments, and judicial attachments are those issued after an official certification of inability to make personal service of process upon a defendant. Like original attachments, judicial attachments result *in rem* jurisdiction only being acquired. *See* Caruthers, HISTORY OF A LAWSUIT, 8th Ed., §§ 60 et seq. *See also* GIBSON'S SUITS IN CHANCERY, 4th Ed., §§ 869 et seq. The statutory provisions for all three types of attachment have their origin in legislation first enacted in 1794, a date some two years previous to the admission of Tennessee as a state in the Union.

■ Turning to the judicial attachment statute here under attack, that statute provides in substance that, following the initiation of a lawsuit by the issuance of a summons in the usual manner and following the return of that summons with the certification by the official whose duty it is to effect service that the defendant named therein was "not to be found in my county," the

---

3. It is to be noted that the plaintiffs are not seeking damages against the sheriff in this lawsuit for his deputy having made false returns. Neither are they contending that they suffered from an unconstitutional or otherwise unlawful application of the statutes here under attack. Rather, the single issue being pressed by the plaintiffs is that the statutes are unconstitutional upon their face.

plaintiff may, by application to the clerk of the court, obtain the issuance of a further summons, or, at his election, may obtain the issuance of a judicial attachment (TCA § 23–607). As with all forms of attachment, the judicial attachment may be effected by way of garnishment (TCA § 23–701). Upon the issuance of a judicial attachment (or attachment by way of garnishment) the case proceeds as though it had been commenced by the issuance of an original attachment, including the requirement that publication be made for notification of the defendant (TCA § 23–644 and § 23–645) and subject to the limitation that, unless the defendant shall thereafter be served with process or voluntarily submit himself to the jurisdiction of the Court, the Court acquires only *in rem* jurisdiction and that only to the extent of the value of the property attached (TCA § 23–657 and § 23–658). In event a defendant defaults in making an appearance after the issuance of a judicial attachment and the seizure of property or garnishment of assets, the Court may stay entry of judgment not less than six months nor more than 12 months (TCA § 23–660). The principal features distinguishing a judicial attachment from an original attachment are that the lawsuit commences as an *in personam* action but is converted to an *in rem* action by the officer's return certifying the non-availability of the defendant for the service of process, the return serving to relieve the plaintiff from having to certify under oath one of the eight statutory grounds for the issuance of an original attachment (TCA § 23–601) and from having to make bond to secure against a wrongful attachment.[4] The statutes in question have always been interpreted by Tennessee courts as allowing an attachment to be used in place of personal service only in extraordinary situations. It was early held that "attachment, whether judicial or original, given by the Act of 1794, is an extraordinary process to enforce the defendant's appearance in cases, and only where 'the ordinary process of law cannot be served on him.'" Welch v. Robinson, 29 Tenn. 264, 265 (1849). Attachment can only be used in place of personal service "where [the defendant] can not be served personally." Cheatham v. Trotter, 7 Tenn. 198, 200 (1823). *See also* Green v. Snyder, 114 Tenn. 100, 103, 84 S.W. 808 (1904).

The Tennessee law provides a defendant against whom a judicial attachment, or a judicial attachment by way of garnishment, has issued and who wishes to contest the writ, a number of possible judicial remedies. One such remedy is that the defendant may appear specially and quash the writ by showing the "not to be found" return was false, all without submitting himself or herself to the general jurisdiction of the Court. Slatton v. Jonson, 5 Tenn. 197 (1817); James v. Hall, 31 Tenn. 297 (1851); Smythe v. Moffett, 6 Tenn.App. 381 (1927); Willshire v. Frees, 184 Tenn. 523, 201 S.W.2d 675 (1947). Another judicial remedy provided is that the defendant may at any time before final action by the Court post a forthcoming or replevy bond, and secure the return

---

4. The authenticity accorded a process officer's return that a defendant is "not to be found in my county" is predicated upon the legal requirements that a sheriff or his deputy, before making such a return, must (a) use "a degree of diligence exceeding that which a prudent man employs in his own affairs" [TCA § 8–810(10)] and (b) "actually has been at the place of abode of such person" (TCA § 8–817). As stated in Robson, Black and Co. v. Hunter, 90 Tenn. 242, 247, 16 S.W. 466, 467 (1891), "[T]he officer must have been to the defendant's residence, his place of business—if he have such—and else-where, in search of him; and, not finding him, must have made inquiry as to his whereabouts, the reason for his absence, and its probable duration." A false "not to be found in my county" return is not only grounds for abating and quashing the attachment or garnishment [Willshire v. Frees, 184 Tenn. 523, 201 S.W.2d 675 (1947); Robson v. Hunter, 90 Tenn. 242, 16 S.W. 466 (1891); Carlisle v. Cowan, 85 Tenn. 165, 2 S.W. 26 (1886)], but also subjects the sheriff, his deputy, and the surety upon their official bonds to an action for damage at the instance of an aggrieved party (TCA § 8–816).

of the attached property or the release of .the garnishment (TCA § 23–649). A further judicial remedy provided is that the defendant may enter a general appearance in the lawsuit and contest all issues in the case, including the propriety of the attachment or garnishment and the merits of the plaintiff's underlying claim. Or, finally, the defendant may recover of the sheriff, his deputy, and the surety upon their official bonds any damage sustained by him or her as a result of a false or unlawful "not to be found in my county" return (TCA § 8–816).

It should be noted, however, that the remedies of the defendant hereinabove recited arise only after the defendant acquires notice of the judicial proceedings, either by reason of the service of a writ of attachment or garnishment, or by reason of publication, or by other means. It should be further noted that, apart from the duties imposed upon a sheriff to effect service of process and make a lawful return thereon, the laws of Tennessee do not require publication or other notice to a defendant prior to the issuance of a judicial attachment under TCA § 23–607 or prior to the issuance of a judicial attachment by way of garnishment under TCA § 23–701. Nor do they secure unto a defendant the right to a hearing prior to the issuance of those writs. It is to these alleged deficiencies in the law that the plaintiff's due process contentions are directed and that form the basis of the constitutional attack upon the subject statutes.

The plaintiffs' constitutional contentions are grounded upon the cases of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and the progeny of thoses cases. In *Sniadach* the United States Supreme Court, in an opinion written by Justice Douglas (Justice Black dissenting) held that a Wisconsin statute permitting the pre-notice and pre-judgment garnishment of wages of a defendant upon whom process could readily have been served violated the requirements of procedural due process and was accordingly unconstitutional. The constitutional principles laid down in *Sniadach* were further developed and amplified in the *Fuentes* case. There Justice Stewart, writing for a majority of the Court, struck down replevin statutes in Florida and in Pennsylvania which permitted the seizure of property by judicial process prior to notice and prior to an opportunity to be heard by the defendant from whom the property was taken. Pointing out that procedural due process, as enunciated in *Sniadach,* was not limited to the seizure of "wages" or "necessities" or any other particular type of property but rather extended to all types of property and emphasizing that only "extraordinary situations" would justify postponing notice and opportunity for a hearing until after the seizure had been effected, Justice Stewart had this to say about such "extraordinary situations":

> "These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control of its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." [5]

---

5. It should be noted that Justice White, joined by the Chief Justice and Justice Blackmun, dissented. The dissent was grounded upon the rationale that post-seizure notice and opportunity to be heard was adequate to meet the demands of due process in the situation presented by the replevin statutes, particularly in view of the conflicting property rights and interests of the parties to the litigation. It was the conclusion of the dissent

It is the plaintiff's contention that the Tennessee judicial attachment and judicial attachment by way of garnishment laws satisfy none of the conditions enunciated above so as to qualify for the "extraordinary situation" exemption from the due process pre-seizure notice and hearing rule enunciated in *Sniadach* and *Fuentes*. Rather, it is contended that the Tennessee laws fall squarely within the due process rule enunciated in those cases.

The difficulty with the plaintiffs' contentions are twofold. In the first place, they fail to adequately acknowledge the recognition given in both *Sniadach* and *Quentes* to the case of Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1920). In both opinions that case was cited as being illustrative of an "extraordinary situation" exempting a judicial seizure of property from the usual prior notice and prior hearing requirements laid down in *Sniadach* and *Fuentes*. Ownbey v. Morgan involved the necessary use of an attachment to secure jurisdiction in a state court— "clearly a most basic and important public interest," as recognized by Justice Stewart. *See* Fuentes v. Shevin, *supra,* at footnote No. 23. It must be remembered that the Tennessee judicial attachment and garnishment laws here under attack are designed for the purpose of permitting courts to acquire jurisdiction where a defendant is not amenable to the personal service of process. They cannot lawfully and properly be used for any other purpose.

In the second place, the plaintiffs' contentions fail to adequately acknowledge the impact upon *Sniadach* and *Fuentes* of the recent decision of the United States Supreme Court in the case of Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In an opinion written by Justice White and concurred in by five justices, the Court there upheld a Louisiana statute permitting the judicial sequestration of property without prior notice and hearing. In doing so, the Court emphasized that:

> "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." (Citations omitted)

Although the Court then proceeds to distinguish the *Sniadach* and *Fuentes* cases, it may be noted that Justice Powell in a concurring opinion and Justice Stewart in a dissenting opinion each interpret the majority opinion in Mitchell v. W. T. Grant Co. as overruling the *Fuentes* case. However that may be it is clear that *Mitchell* can only be interpreted as a signficant limitation upon the rules laid down in both *Sniadach* and *Fuentes* and as strengthening the rule laid down in Ownbey v. Morgan according due process approval to the use of an attachment without prior notice where the use of the attachment was necessary to the acquisition of jurisdiction.

This Court is accordingly of the opinion that the Tennessee judicial attachment and garnishment statutes here under attack comport with due process. Their use is designed and authorized only as a means of acquiring jurisdiction over the property of a defendant whose whereabouts cannot be ascertained. A requirement for prior notice in such a situation would, to say the least, be somewhat of an anomaly.

■ Of course, a principal thrust in the plaintiffs' factual contentions is that the officer's return to the effect that the plaintiffs were "not to be found in my county" was in each instance a false return. Suffice it to say a public officer's dereliction in performing his statutory duties does not thereby render the statute unconstitutional. Nor does

that the continuing availability to creditors of self-help remedies not subject to Fourteenth Amendment strictures, as well as the right to

include in credit instruments waivers of notice, rendered the majority decision "no more than ideological tinkering with state law."

it leave an injured party without recourse or remedy. For, as previously noted, an aggrieved party is entitled to recover of an officer for losses sustained by reason of a false return upon a judicial process.

An order will enter dismissing this lawsuit.