**AARON FERER & SONS CO., Debtor and Debtor in Possession, Plaintiff,**

v.

**Aaron BERMAN, d/b/a Berman Steel Company, Defendant.**

**Civ. No. 76–0–151.**

United States District Court, D. Nebraska.

May 16, 1977.

---

Jerrold L. Strasheim, Steven C. Turner, Omaha, Neb., for plaintiff.

Waldine H. Olson, Omaha, Neb., for defendant.

DENNEY, District Judge.

This matter is before the Court upon the motion of defendant to dismiss this case for lack of *quasi in rem* jurisdiction and lack of *in personam* jurisdiction [Filing # 46]. The issue presented is whether the Nebraska prejudgment attachment statutes for acquiring *quasi in rem* jurisdiction violate the due process clause of the Fourteenth Amendment of the United States Constitution.

## I.

Plaintiff, Aaron Ferer & Sons Co., Debtor and Debtor in Possession [hereinafter referred to as Ferer], instituted this action on April 14, 1976, seeking to recover the value of metals purchased from defendant, Aaron Berman, d/b/a Berman Steel Co. [hereinafter referred to as Berman], and allegedly retaken from Ferer by Berman after the filing of Ferer's Chapter XI petition in Bankruptcy Court. Plaintiff's causes of action are founded upon Sections 60, 64a, 67, 70, and 342 of the Bankruptcy Act, 11 U.S.C. §§ 96, 104a, 107, 110 and 742, and breach of contract.

Initially, Ferer asserted personal jurisdiction over Berman under Nebraska's Long-Arm Statute, Neb.Rev.Stat. § 25–535. Berman contested jurisdiction, as did the defendants in six similar lawsuits instituted by Ferer in this Court. Although the Court ultimately found that it lacked personal jurisdiction in the other lawsuits brought by Ferer, *Aaron Ferer & Sons v. Scrap Iron & Metal Co.*, 418 F.Supp. 674 (D.Neb.1976), decision on Berman's motion to dismiss was held in abeyance pending plaintiff's attempt to attach a debt owed by the United States National Bank of Omaha, Nebraska, to Berman for the purpose of securing *quasi*

*in rem* jurisdiction pursuant to Neb.Rev. Stat. § 25–1001 *et seq.* (1975).[1]

Plaintiff filed the requisite pleadings to secure the garnishment of the debt on February 18, 1977, and an Order of Attachment was issued, without bond or security, by Senior Judge Richard E. Robinson upon the following conclusive affidavit of plaintiff's attorney:

1. That he is one of the attorneys for Aaron Ferer & Sons Co., Plaintiff in the above-entitled case.

2. That said Plaintiff has commenced an action against Aaron Berman, d/b/a Berman Steel Company, Defendant herein, an action to recover damages in an as yet unknown sum, upon certain contracts for the purchase of metal, and upon Plaintiff's rights as Debtor in Possession, together with plaintiff's costs of suit.

3. That said claim is just, and that Plaintiff ought, as Affiant believes, to recover the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00), with interest thereon, together with Plaintiff's costs of suit.

4. That the Defendant is a nonresident, and as Affiant believes, is a resident of the State of California; that said Defendant does not have a resident agent within the State of Nebraska.

5. That Affiant believes that the United States National Bank, Omaha, Nebraska is indebted to the Defendant or has assets belonging to said Defendant, which property cannot be levied upon by attachment.

6. That this Affidavit is made pursuant to Section 25–1001, Nebraska Revised Statutes.

7. That Plaintiff has been a bona fide resident of the State of Nebraska for at least six months preceding the filing of this petition.[2]

## II.

Defendant, relying upon *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) contends that the Ne-

---

1. 25–1001. *Attachment; grounds.* The plaintiff, in a civil action for the recovery of money, may, at or after the commencement thereof, have an attachment against the property of the defendant when the defendant or one of several defendants (1) is a foreign corporation, or a nonresident of this state; (2) has absconded with the intent to defraud his creditors; (3) has left the county of his residence to avoid the service of a summons; (4) so conceals himself that a summons cannot be served upon him; (5) is about to remove his property, or a part thereof, out of the jurisdiction of the court, with the intent to defraud his creditors; (6) is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors; (7) has property, or rights, in action, which he conceals; (8) has assigned, removed or disposed of, or is about to dispose of his property, or a part thereof, with the intent to defraud his creditors; or (9) fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought. If the demand is not founded on contract, the original petition must be presented to some judge of the Supreme, district or county court, who shall make an allowance thereon of the amount in value of the property that may be attached, and the amount of bond, if any, to be given by the

plaintiff. An attachment shall not be granted on the ground that the defendant is a foreign corporation, or a nonresident of this state, for any claim other than a debt or demand arising upon contract, judgment or decree, unless the plaintiff shall have been a bona fide resident of this state for at least six months preceding the filing of the petition.

2. Neb.Rev.Stat. § 25–1002 (1975) provides as follows:

An order of attachment shall be made by the clerk of court in which the action is brought, in any case mentioned in section 25–1001, when there is filed in his office an affidavit of the plaintiff, his agent or attorney showing (1) the nature of the plaintiff, his agent or attorney showing (1) the nature of the plaintiff's claim; (2) that it is just; (3) the amount which the affiant believes the plaintiff ought to recover; and (4) the existence of some one of the grounds for an attachment enumerated in section 25–1001 and, also, in case the demand is not founded on contract, the original petition with the allowance thereon by a judge of the Supreme, District or county court of the amount for which the attachment may issue, and of the amount of bond, if any, to be given by the plaintiff.

braska Foreign attachment scheme is constitutionally deficient in the following aspects: (1) the attachment may issue upon conclusions, rather than facts; (2) the procedure does not require a judicial determination; (3) the creditor is not required to indemnify the defendant; and (4) the provision for a post-seizure hearing does not permit the court to review the validity of the underlying claim.

The Supreme Court in *Fuentes* held that, except in certain extraordinary situations, due process of law requires notice and a hearing when property is to be seized during the pendency of a lawsuit brought against the property owner. The Court then discussed the "extraordinary situations" exception:

> These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a governmental official. 407 U.S. 90–91, 92 S.Ct. 1999.

Following *Fuentes*, the Court apparently retreated from *Fuentes'* explicit preference for prior notice and hearing when it approved the Louisiana sequestration procedures in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). The Court stated that the usual rule has been that " '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 596–597, 51

S.Ct. 608, 611, 75 L.Ed. 1289 (1931)." 416 U.S. at 611, 94 S.Ct. 1902.

Plaintiff contends that *Fuentes* and its progeny should not be extended to garnishments obtained for the purpose of obtaining *quasi in rem* jurisdiction. The Court notes that authority may be found on both sides of this issue: The courts in *Jonnet v. Dollar Savings Bank· of City of New York*, 530 F.2d 1123 (3rd Cir. 1976); *In Re Law Research Services, Inc.*, 386 F.Supp. 749 (S.D. N.Y.1974); and *U.S. Industries, Inc. v. Gregg*, 348 F.Supp. 1004 (D.Del.1972), reversed on other grounds, 540 F.2d 142 (3rd Cir. 1976), construed *Fuentes* to apply in *quasi in rem* situations; the courts in *Holtzman v. Holtzman*, 401 F.Supp. 520 (S.D.N.Y. 1975); *Merrill Lynch Government Securities, Inc. v. Fidelity Mutual Savings Bank*, 396 F.Supp. 318 (S.D.N.Y.1975); *Usdan v. Dunn Paper Company*, 392 F.Supp. 953 (E.D.N.Y.1975) and *Stanton v. Manufacturers Hanover Trust Co.*, 388 F.Supp. 1171 (S.D.N.Y.1975) declined to so extend *Fuentes*.[3]

The thrust of plaintiff's argument requires the Court to carefully evaluate the continuing validity· of *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). In *Ownbey*, Delaware plaintiffs attached a nonresident's shares in a Delaware corporation in order to establish *quasi in rem* jurisdiction. The writ of attachment issued automatically upon plaintiff's filing an affidavit with the court clerk and posting a bond. Although the challenge went only to the requirement that the defendant put up "special bail" in order to contest the attachment, the Court expressly approved the Delaware foreign attachment scheme. Plaintiff therefore vigorously argues that the Supreme Court's recent citations of *Ownbey* indicates continuing approval of the Delaware statutory scheme.[4]

---

**3.** However, the cases opting for the restrictive interpretation may be construed to sanction only the elimination of prior notice and hearing. *See, e. g., Maxwell v. Hixson*, 383 F.Supp. 320 (E.D.Tenn.1974), *affirmed*, 425 U.S. 927, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976). Since plaintiffs in *Maxwell v. Hixson, supra*, contended

only that the statute violated *Fuentes'* pre-seizure notice and hearing rule, this Court is unable to construe the Supreme Court's affirmance as rejecting arguments not presented.

**4.** In *Fuentes*, the Court expressly noted that "there are 'extraordinary situations' that justify postponing notice and opportunity for a hear-

The Court is unable to agree that recent citations of *Ownbey* indicate approval. "The citation in *Fuentes* and *Mitchell* is no more than an example of a situation in which pre-seizure hearing is not required. One cannot read these citations as endorsing all aspects of the *Ownbey* opinion. [citations omitted]." *Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d at 1128.

The reasons for this Court's negative view of *Ownbey*'s validity are several. First, to Justice Pitney the touchstone of due process lies in history.

A procedure customarily employed, long before the Revolution, in the Commercial Metropolis of England, and generally adopted by the States as suited to their circumstances and needs, cannot be deemed inconsistent with due process of law, even if it be taken with its ancient incident of requiring security from a defendant who after seizure of his property comes within the jurisdiction and seeks to interpose a defense. 256 U.S. at 111, 41 S.Ct. at 438.

As Judge Gibbons recognized in his concurring opinion in *Jonnet v. Dollar Savings Bank of City of New York, supra,* "[t]he flaw in Justice Pitney's reasoning is that prior to 1868 the adoption of the procedure by the states had no due process significance." 530 F.2d at 1136. Moreover, it is clear that, under modern due process analysis, ancient lineage of a procedural rule is only one factor to be considered.

ing," offering as an example" attachment necessary to secure jurisdiction in state court—clearly a most basic and important public interest. *Ownbey v. Morgan*, 256 U.S. 94 [41 S.Ct. 433, 65 L.Ed. 837.]" 407 U.S. 90, 91, n.23, 92 S.Ct. 1999.
Again, in *Mitchell v. W. T. Grant Co., supra,* the Court analyzed *pre-Fuentes* law and stated as follows:
More precisely in point, the Court had unanimously approved prejudgment attachment liens effected by creditors, without notice, hearing, or judicial order, saying that "nothing is more common than to allow parties alleging themselves to be creditors to establish in advance by attachment a lien dependent for its effect upon the result of the suit."

" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances . . . .. Representing a profound attitude of fairness . . . 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess . . . .." *Joint Anti-fascist Committee v. McGrath*, 341 U.S. 123, 162–163, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring).

*Ingraham v. Wright*, —— U.S. ——, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).

Second "the principal *Ownbey* holding, that a defendant's access to the civil courts can be conditioned upon the posting of a bond, has since been overtaken by significant changes in the law. *See Boddie v. Connecticut*, 401 U.S. 371 at 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)." *In re Law Research Services, Inc.*, 386 F.Supp. at 753. In fact, the Court of Appeals for the Eighth Circuit has repudiated the holding of *Ownbey*, thereby recognizing its demise in modern law.

The bond requirement places a considerable impediment on any debtor who seeks to contest the attachment of any item of significant value, and to the extent that any debtor is unable to meet the bond requirement in order to obtain a discharge hearing, the goal of minimizing the impact on the debtor of a wrongful attachment has been undermined. *Guzman v. Western State Bank of Devils*

"The fact that the execution is issued in the first instance by an agent of the State but not from a Court, followed as it is by personal notice and a right to take the case into court, is a familiar method in Georgia and is open to no objection." *Coffin Bros. v. Bennett*, 277 U.S. 29, 31 [48 S.Ct. 422, 72 L.Ed. 768] (1928). To the same effect was the earlier case of *Ownbey v. Morgan*, 256 U.S. 94 [41 S.Ct. 433, 65 L.Ed. 837] (1921). Furthermore, based on *Ownbey* and *Coffin*, the Court later sustained the constitutionality of the Maine attachment statute. *McKay v. McInnes*, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929).
416 U.S. at 613, 94 S.Ct. at 1903.

*Lake, North Dakota*, 516 F.2d 125, 131 (8th Cir. 1975).

■ Plaintiff has not asserted an argument founded in reason or logic as to why procedural safeguards should be less stringent in foreign attachment situations than in other "extraordinary situations" which must satisfy the tripartite test of *Fuentes*, other than the important public interest in securing jurisdiction in a convenient forum for its residents. The Court fails to see how this interest justifies dispensing with procedural safeguards which minimize the risk of a wrongful taking and involve little fiscal and administrative burdens on the state.

The analysis requires consideration of three distinct factors: "first, the private interest that will be affected . . . ; second, the risk of an erroneous deprivation of such interest . . . and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the [state] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976). *Cf. Arnett v. Kennedy*, 416 U.S. 134, 167–168 [94 S.Ct. 1633, 40 L.Ed.2d 15] (1974) (Powell, J. concurring).

*Ingraham v. Wright*, —— U.S. at ——, 97 S.Ct. at 1414. It cannot be disputed that the private interest involved in foreign attachment cases are as significant as the private interest in other seizures. In fact, the interest in foreign attachments may be even more substantial. The debtor is not only deprived of the use of his property,[5] but may also be forced to either defend a lawsuit in an inconvenient forum which would, absent *quasi in rem* jurisdiction, offend "traditional notions of fair play and

substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), or forego his defense because of inability to defend in a foreign state.

Finally, plaintiff urges the Court to follow *Ownbey* as the only Supreme Court precedent directly on point. The Court is compelled to decline this invitation to perpetuate an antiquated decision which it perceives as a gross injustice in the law, especially since, on consideration of recent precedent "[i]t is inconceivable that *Ownbey* would be decided today as it was decided in 1921." *Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d at 1136 (Gibbons, J. concurring).

### III.

■ This brings the Court to the task of deciding the constitutionality of the Nebraska statutory scheme and the garnishment in this case. The Court infers from *Fuentes, Mitchell* and *Di-Chem* the following procedural due process requirements to minimize a wrongful taking *pendente lite* :

(1) The writ must issue only upon an affidavit containing facts. The affidavit must be by the creditor or his attorney who has personal knowledge of the facts.

(2) The writ must be issuable by a judge or at least involve judicial participation.[6]

(3) The creditor must be required to indemnify the debtor from the risk and damages of a wrongful taking.

(4) The debtor must be able to dissolve the attachment by filing a bond.

(5) The debtor must be afforded an immediate post-seizure hearing wherein the creditor shall have to prove the grounds upon which the writ was issued.

---

**5.** In this case, defendant is deprived of the use of money in excess of $262,000.00.

**6.** In *Guzman v. Western State of Devils Lake, North Dakota, supra*, the Eighth Circuit stated:

We recognize that in the most recent decision by the Supreme Court in this area of the law . . . there are suggestions . . .

that some of the justices do not believe that supervision of the *ex parte* proceeding by a *judicial* officer is required. . . . Nevertheless, we are compelled to observe the criterion established by the opinion in *Mitchell* until instructed otherwise by the Court. 516 F.2d at 131, n.7.

The Nebraska statutes are ambiguous in several aspects. Section 25–1002[7] requires that the affidavit show "(1) the nature of the plaintiff's claim; (2) that it is just; (3) the amount which affiant believes the plaintiff ought to recover; and (4) the existence of one of the grounds for an attachment enumerated in Section 25–1001 . . . ." In light of recent United States Supreme Court cases, the Nebraska Supreme Court could construe Section 25–1002 to require an affidavit of facts rather than conclusions.

Section 25–1040 provides that the "[t]he defendant may, at any time before judgment, upon reasonable notice to the plaintiff, move to discharge an attachment, as to the whole or part of the property attached." Although the Nebraska Supreme Court has held that the merits of the underlying claim upon which the attachment rests cannot be inquired into on hearing to dissolve an attachment, *McDonald v. Marquardt*, 52 Neb. 820, 73 N.W. 288 (1897), again, the court could, in light of recent Supreme court pronouncements, construe Section 25–1040 to provide "an adequate preliminary inquiry into the merits of a plaintiff's underlying claim." *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208 at 1210, 47 L.Ed.2d 587 (1976).

The Nebraska statutes, however, are unambiguous in their failure to require the creditor to post a bond to indemnify a debtor from damages from a wrongful taking in contract cases[8] and when the ground of the attachment is that the defendant is a foreign corporation or a nonresident of Nebraska.[9] A constitutionally valid statute must provide "machinery to indemnify a defendant for damages to wrongful attachment, which might occur, for example, if he in fact resided in the state or if the claim pleaded is frivolous or perjurious." *Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d at 1130.

The statutes allow the clerk of the court to issue the writ except in cases where plaintiff's demand is not founded on contract. Section 25–1001.[10] Although the writ in this case issued by a judge, his participation appears to have been ministerial only, since the affidavit upon which the writ issued contained only conclusions. Plaintiff has not introduced any evidence that the underlying claim was scrutinized prior to issuance of the writ. Although Section 25–1001 could be construed to require more, the statute provides that "[i]f the demand is not founded on contract, the original petition must be presented to some judge . . . who shall make an allowance thereon of the amount of bond, of the amount in value of the property that may be attached, and the amount of bond, if any, to be given by the plaintiff." The Order of Attachment issued in this case is unrebutted prima facie evidence that the issuing judge did no more than the statute, on its face, appears to require.

Although certain procedures of Neb.Rev. Stat. § 25–1001 *et seq.* are ambiguous in several material aspects which may be upheld by proper interpretation, the statutory scheme fails to properly balance the conflicting interest of the debtor and creditor by permitting a clerk of the court to issue the writ without judicial supervision and by eliminating the requirement of indemnity for a wrongful taking in certain situations. Moreover, the writ of attachment in this case is clearly unconstitutional for the reasons that it issued on a conclusive affidavit, without a bond, and without adequate judicial supervision.

An Order shall be entered quashing the writ of attachment. Further proceedings in this action are hereby stayed.[11]

---

7. See n.2, *supra.*

8. Neb.Rev.Stat. § 25–1002 (1975) set forth in n.2, *supra.*

9. Neb.Rev.Stat. § 25–1003 (1975).

10. See n.1, *supra.*

11. This Court's dismissal of the several other lawsuits instituted by Ferer have been appealed to the Eighth Circuit and were argued on March 17, 1977. In the interests of judicial economy and in fairness to plaintiff, the Court shall stay determination of Berman's motion to dismiss for lack of personal jurisdiction pending the Eighth Circuit's decision.