| 52 | 711 |
| 55 | 91 |
| 52 | 711 |
| 156 | 595 |

E. I. COLE ET AL. V. WILLIAM F. EDWARDS ET AL.

FILED NOVEMBER 18, 1897.   No. 7583.

1. Trover and Conversion: WRONGFUL LEVY: LIABILITY OF PLAINTIFF. Where an officer levies writs of attachment on the goods of a stranger, the plaintiffs in the attachment cases will be liable in trover jointly with the officer, not only when they directed the wrongful levy, but also where they subsequently adopted or ratified his acts.

2. ——: ——: ——: RATIFICATION. The plaintiff in an attachment suit has control of the writ and may require the release of the levy. Therefore, where the goods of a stranger have been levied upon, and the plaintiff with knowledge of that fact refuses on demand to release them, such refusal constitutes a ratification of the wrongful levy.

3. ——: ——: ——: ——. If in such case the plaintiff, with knowledge of the true ownership of the goods, buys them at the sale and converts them to his own use, this too will constitute a ratification.

4. ——: ——: ——: ——. If in such case the plaintiff, with knowledge of the true ownership, receives the proceeds of the sale, that fact will constitute a ratification,

ERROR ·from the district court of Jefferson county. Tried below before BUSH, J.   *Affirmed.*

*John C. Hartigan, W. H. Barnes,* and *Charles B. Rice,* for plaintiffs in error.

*John Heasty* and *J. H. Broady, contra.*

IRVINE, C.

.William F. Edwards brought this action against the plaintiffs in error and A. Allen and Charles B. Rice, who are made defendants in error because they refused to join the plaintiffs in error in the proceeding. The petition charged the defendants below with the conversion of a quantity of chattels of the plaintiffs. The defendants all answered by general denials. There was a verdict against all the defendants except Rice. The plaintiffs in error were plaintiffs in sundry actions against one Laughlin, all begun at the same time and in each of which there was a writ of attachment issued and levied upon the chattels in controversy as the property of Laughlin. The writs were issued and levied at the same time, one attorney acting for all the plaintiffs. The levies were made by the defendants below and defendant in error Allen, as special constable. After the levies an attorney of Edwards notified the defendants that the goods belonged to Edwards and demanded that they be released from the levies; the defendants refused to release them, saying that they would fight it out. The goods were sold under the writs and the proceeds divided among the plaintiffs to the writs in the proportion of their several judgments. There is evidence that at the sale the goods were ostensibly bought by strangers, but that they were stored on the premises of some of the defendants; that after the sale they so remained in the custody of these defendants until again sold at public sale on behalf of the ostensible purchasers. From these facts and from the evident co-operation and common understanding of the plaintiffs in error throughout the progress of the attachment cases, there is room for the inference that the purchase at the attachment sale was on their behalf. There is no doubt that the goods belonged to Edwards, and indeed all the facts as we have stated them are proved without contradiction, and the only debatable point is as to whether the plaintiffs in error became purchasers at the sale.

Under this state of the proof the plaintiffs in error contend that the verdict is not sustained by the evidence. On the contrary, we think it is the only verdict the evidence would sustain. It is said that the defendants are sued jointly, the petition charging a conversion by all, and that under such allegations it became necessary for the plaintiff to prove that all had participated in the taking and conversion of the property. This is not the law. In tort all who contribute to the wrong are liable, and may be sued jointly, or the plaintiff may proceed against such as he sees fit. And particularly in actions against an officer for abuse of process, the plaintiffs to the writ are liable jointly with him if they direct the unlawful acts or subsequently adopt or ratify them. (*Taylor v. Ryan*, 15 Neb., 573; *Walker v. Wonderlick*, 33 Neb., 504; *Wonderlick v. Walker*, 41 Neb., 806; *Murray v. Mace*, 41 Neb., 60.) There is not in this case any evidence that the plaintiffs to the writ directed a levy on the property in controversy, but it does appear that before its sale they were notified of its ownership and requested to release it and they refused to do so. We have no doubt that this was an adoption and ratification of the con stable's acts, and rendered them liable as trespassers *ab initio*. It is said that the goods were not then in the possession of the creditors, but in that of the constable, and that therefore it was not in their power to comply with the demand. But the plaintiff has control of such a writ and may require the officer to release his levy. To release the property of a stranger which has been seized under a writ does not even operate as a satisfaction. The creditor may require its release for his own protection without jeopardizing his judgment. (*Green v. Burke*, 23 Wend. [N. Y.], 490; *Bank of Tennessee v. Turney*, 7 Humph. [Tenn.], 271; *Black v. Nettles*, 25 Ark., 606.) The writ was, therefore, within their control, and they are chargeable with the consequences of their refusal to exercise that control in favor of the rightful owner of the goods. Moreover, after so learning of

plaintiffs' claim to the goods, it is inferable that they became purchasers at the sale, and then appropriated the goods to their own use by reselling. This would be a clear case of conversion, and as the question of their becoming purchasers was submitted to the jury by the instructions, we must assume that the verdict included a finding favorable to Edwards on that issue. Still further it appears that with knowledge of the true ownership they received the proceeds of the sale. It has been held that this would be sufficient to charge them. (*Hyde v. Cooper*, 26 Vt., 552.) In the case cited the court distinguished between such a case and one where the plaintiff was ignorant of the true ownership, and also one where the officer had been guilty merely of a mistake of law, although the plaintiff had knowledge thereof. *Heidenheimer v. Sides*, 67 Tex., 32, relied on by the plaintiffs in error on this point, merely holds that reception of the proceeds of a writ will not render the plaintiff thereto liable when he was ignorant of the abuse of process. *Evarts v. Hyde*, 51 Vt., 183, is to the same effect.

Error is assigned on the giving of one and the refusal of several instructions. As the court in giving and refusing these acted in accordance with the principles of law announced above as governing the case, there was no error in this respect.

Complaint is made of the admission in evidence of transcripts of the records of the justice of the peace in the attachment cases. It is said that they were incompetent and immaterial. No reason is given for saying that they were incompetent; they appear to be properly authenticated and we cannot see that they were not competent. They were material for the purpose of showing that Allen was acting in pursuance of writs sued out by plaintiffs in error and within their control, and that they received the proceeds.

AFFIRMED.