## OMAHA NATIONAL BANK V. E. A. ROBINSON.

FILED NOVEMBER 17, 1898. No. 8458.

1. **Evidence:** REVIEW. The admission of immaterial evidence will, if prejudicial, work a reversal of a judgment.

2. ———: ———: HARMLESS ERROR. Errors in admission of evidence or giving instructions which were not prejudicial to the rights of the complainant are not cause for reversing a judgment.

3. **Attachment:** WRONGFUL SEIZURE: RATIFICATION BY PLAINTIFF. If, in an attachment in which the goods of a stranger to the suit have been taken and sold under the writ, the plaintiff, with knowledge of the true ownership of said goods, receives the proceeds of the sale, it constitutes a ratification of the levy. *Cole v. Edwards*, 52 Neb. 711, followed.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Reversed.*

*Hall & McCulloch*, for plaintiff in error.

*Gregory, Day & Day*, contra.

HARRISON, C. J.

The firm of Edholm & Aiken was, during a portion of the month of January, 1890, and some years prior thereto, conducting a retail jewelry business in Omaha, and on the 18th of said month the bank, plaintiff in error herein, commenced an action against the firm to recover the amount of an indebtedness of the firm to the bank, and procured therein the issuance of a writ of attachment, which was levied on the stock of jewelry of the firm, inclusive of certain chains, etc., ownership of which was subsequently asserted by the defendant in error herein. At the time of the levy of the writ these particular articles were attached to or contained in what are

styled in the record "Canton flannel rolls," and were during business hours unwrapped or unrolled, and displayed in stock, and during hours when the store was closed or of nights kept in the safe. Defendant in error claimed that these goods were sent to Edholm & Aiken as samples, or "memorandum goods," or goods on selection, to be examined, such as were chosen to be retained by the customer and the others returned to the party from whom received and in whom the title remained until a report was made of the selections. These goods were sold under the levy of the process of attachment, and the proceeds applied in payment of the debt for the enforcement of which the writ had been issued, and the defendant in error instituted this action to recover of the bank their value, and as the result of a trial of the issues joined was awarded a judgment.

One of the issues of the litigation was whether the chains, etc., had been sold to Edholm & Aiken or sent to them on selection; and another was, did the bank actively direct the levy of the writ of attachment, and on these particular goods, or, if not, did it ratify the act of the officer in making the levy?

One of the alleged errors which is presented for plaintiff in error is in regard to the admission of testimony. In the appraisal of the goods levied upon a list of the articles was made which covered several pages of the paper used. Some of the pages were numbered and others were lettered, and the ascertainment of the reason for changing from numbers to letters for some of the pages of the inventory was made the subject-matter of interrogatories to a witness for defendant in error. This drew out in the answers, or the answer to the question to which the witness was finally allowed to voice a response, that it was done to separate in the list the goods which were supposed to belong to Edholm & Aiken from those that were supposed to be memorandum goods. We have given almost, if not quite, the exact language of the witness,—exact in the portions material to our inquiry.

It appears that rumor or information of some sort had come to the deputy sheriff who had the appraisal in charge, and the parties who were called and acted as appraisers, that the goods in flannel rolls might possibly be claimed by a person other than the firm, the defendant in the attachment; and to preserve in the list the identity of the particular articles, the pages were lettered to distinguish them from the other pages of the inventory of the general stock, which were numbered. The deputy sheriff gave testimony in the case at bar that they—he and the other parties appraisers—had no knowledge of probable or possible claims of ownership in a person or persons other than the firm except what was derived from hearsay. The list made during appraisement, its particular arrangement of pages, or their designations by letters or numbers, in whole or in part, or the reason for each or all, were wholly without importance or materiality to the issues on trial, and, by the admission of the testimony of which complaint is made, there was placed before the jury the rumors or hearsay on a vital point of litigated matters, and with a direct bearing on a question as to which there was much to bear out the contention of either party and it was well calculated to work prejudicially against the rights of the complainant.

It is also urged that there was an error committed in the admission of the testimony of a witness to the effect that the goods, the damages for the wrongful appropriation of which were sought in this action, were not sold to Edholm & Aiken, but forwarded to the firm as samples or on selection, when it appeared that it was doubtful whether the witness had a personal knowledge in relation to the matter, or other than that derived from hearsay. The allowance of this testimony to be given was, we think, probably an error, but if so, it worked no prejudice to the rights of the complaining party.

At the time of the issuance and levy of the writ of attachment in the suit by the bank against the firm of Edholm & Aiken, or on January 18, 1890, it appeared

that D. E. Thompson was either in possession or claimed the right of possession of the stock of jewelry under and by virtue of a chattel mortgage executed and delivered to him by the firm, and the sheriff, as was his right, under such circumstances, demanded an indemnity bond, and one was given by the bank which contained a recitation of the reason for its being executed and delivered,—*i. e.*, that "one D. E. Thompson claims said stock by virtue of a chattel mortgage and claims to have had possession at the time said sheriff took possession under said writ." It is also disclosed by the evidence that said bond was executed and delivered prior to any assertion of a claim of ownership of any of the goods by or for the defendant in error. The indemnity bond was offered in evidence for defendant in error and was received over the objection for the bank, the ground of the ruling at the time of its reception being stated by the court as follows: "Well, I will receive it for that one purpose only, as tending or not tending, as the case may be (counsel may discuss that question), whether or not there is any ratification of the act of the sheriff, or authorization by the bank of the act of the sheriff in attaching the property; that is all,—showing no liability on the bond but simply the one fact,—and it is a matter for the jury to say from all the facts in the case. For that purpose I will receive it."

At the time the bond was given the defendant in error was not claiming any of the property which had been attached. He was not in the contemplation of the parties. The bond was made for the purpose of indemnifying the officer against the claim of Thompson, and cannot be said to have been a ratification of the levy with any other conditions than were then elemental of it and known, or with any other claims than were then existent against it and known. It was established by the evidence that the bank did not give directions in regard to the levy, did not designate any goods upon which it should be made, but that it was delivered to the officer to be

42

levied on the property of Edholm & Aiken. It has been said: "When an officer is directed to serve a writ and there is a reasonable doubt that the title to the property is in the defendant, the officer may demand an indemnifying bond from the creditor before he levies upon the property, and, if such bond of indemnity is not given, the officer is under no obligation to make a levy on the property. Where the defendant's property in the goods is disputed, the sheriff has a common-law right to require indemnity before seizing the property. When the property which the officer is directed to seize is not in possession of the defendant, but is in possession of a third person, and there is reason to doubt that the defendant owns such property, the sheriff may lawfully require a bond of indemnity before he makes the attachment. If the property is attached without any controversy as to the title and is afterward claimed by a third person, the officer may then demand a bond of indemnity before he proceeds any further." (1 Shinn, Attachment sec. 203.)

It is clear that the bond in question here was not given with a view to any claim of defendant in error to the goods upon which the writ was to be levied; hence it cannot be said that the giving of the bond was in effect a direction of a levy on his goods. It was not executed as a part of a specific direction to do something of which the bank had no knowledge. It was asked to be given because of the claim as it stated of D. E. Thompson, and executed in response to such request. It seems clear that the indemnity bond furnished no evidence to establish a direction by the bank of the levy of the attachment writ on the property of defendant in error, or of a ratification by it of such a levy; hence it was error to admit it, and one well calculated to be harmful to the rights of the plaintiff in error.

It is further argued in this same connection that this, if an error, was without prejudice, for the reason that there was undisputed testimony of a demand for defendant in error on the bank to release the levy on these

goods, which was refused. The testimony on this point shows a demand on the cashier of the bank, not for a release of the levy, but a surrender of the goods to the attorney for defendant in error. The cashier referred the attorney to the counsel for the bank with the remark that whatever they did would be all right. A demand was then made on counsel for not a release of the levy but again that the goods be given to attorney for defendant in error, and this was refused on the ground that the goods could not be delivered to defendant in error as they were claimed by D. E. Thompson, and the bank would be answerable to him if it gave the goods to a third party. A refusal of a demand of the true owner and with knowledge of such ownership to release the levy would have constituted a ratification. (*Cole v. Edwards*, 52 Neb. 711.) But not so a refusal of a demand to deliver the goods to the party; but with full knowledge of the claim of ownership of the goods by defendant in error the bank applied for an order for their sale and received it. The sale was made and it received the proceeds. This, if the ownership was as claimed, would be an adoption or ratification of the act of levy. (*Cole v. Edwards, supra.*) This last being true, the error in the admission of the bond was without prejudice.

There is a criticism in the argument of some of the instructions given, the basis of it being that in each the trial court essayed to embrace all elements necessary to a verdict favorable to a designated party and omitted a material one. If taken literally, and out of the connection in which given, each of the said instructions may be said to be open to the objection urged against it; but, in view of the circumstances and facts developed in evidence, and when read as they were in connection with the other instructions, it hardly seems possible that any one would or could misunderstand them or fail to catch their true import, and we doubt whether the technical errors committed—the subject of the complaint—could alone be enough to work a reversal of the judgment. We

do not deem it best at this time to discuss the sufficiency of the evidence to sustain the verdict. The question of the defendant in error's ownership of the property was a question for the jury, and there was testimony admitted which, we have hereinbefore stated, should have been excluded. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.