Argued 6 December, 1900; decided 14 January, 1901.

## SHARP v. JOHNSON.

[63 Pac. 485.]

REPLEVIN — UNDIVIDED INTEREST IN PERSONALTY.

1. Replevin will not lie for an undivided interest in personal property: *Huffman* v. *Knight*, 36 Or. at p. 584, applied.

ATTACHMENT OF UNDIVIDED INTEREST IN CHATTELS.

2. An officer levying on an undivided interest in chattels may properly take the entire chattel into his possession—he must take control of it all in some way, and if he sees fit to seize it to the utter exclusion of all other interested persons, he will not be chargeable with conversion.

AGISTER'S LIEN INDEPENDENT OF STATUTES.

3. Independently of statute or special agreement, one who cares for an animal of another has no lien thereon for his charges, since he does not impart any new or added value to it, and does not come within the policy of the law giving innkeepers a lien on baggage, he not being bound to receive all animals that may be brought to him for keeping.

AGISTER'S LIEN — OWNERSHIP OF THE ANIMALS.

4. Under Section 3684, Hill's Ann. Laws, providing that "any person who shall feed any livestock or bestow labor or care thereon, at the request of the owner or lawful possessor thereof, shall have a lien thereon for his just charges," the agister cannot claim a lien on stock of which he is part owner.

AGISTER'S LIEN FOR FEED FURNISHED BY ANOTHER.

5. Under Section 3684, Hill's Ann. Laws, no lien can be maintained for feed or care bestowed on stock for which the claimant paid—paying bills for the care of the animals will not support a lien, since that is a personal right originating in the services of the lien claimant.

AGISTER'S LIEN — NON-LIENABLE ITEMS.

6. The statute does note give an agister's lien for freight, entrance and jockey fees paid in managing a horse on a race circuit.

REPLEVIN BY JOINT OWNER OF CHATTELS.

7. Mere possession by a joint owner of personalty does not entitle him to a return of the property taken in attachment against the interest of the other owner, such possession being that of the co-owner, and the officer having a right to levy on the entire property to enforce a claim against the co-owner.

From Lane: J. W. HAMILTON, Judge.

Action by Ola Sharp against A. J. Johnson to recover possession of a race horse called Black Alder. The plaintiff alleges that she is the owner of an undivided one-third interest in the horse, and that B. L. Bradley is the owner of the other two-thirds; that she had a lien on Bradley's interest therein, for the keep and board of the horse, under Section 3684 of the statute (Hill's Ann. Laws), and was in possession of the animal on the twenty-first of April, 1898, when defendant wrongfully and unlawfully took him from her. The defendant in his answer denies all the material allegations of the complaint, except the taking; and for affirmative defenses alleges (1) that the horse belonged to T. C. Sharp and B. L. Bradley, who were indebted to R. R. Hays for the purchase price thereof in the sum of $500; that on the twenty-first of April, 1898, Hays commenced an action against Sharp and Bradley, and caused a writ of attachment to be issued, under which the defendant, as sheriff of Lane County, attached the horse as their property by taking him into his custody: (2) that the plaintiff is the wife of T. C. Sharp, and, prior to the date referred to, she and her husband conspired and confederated together, with the purpose and intent to cheat Bradley out of his interest, and Hays out of his debt, by wrongfully and unlawfully pretending and claiming that Sharp had sold his interest in the horse to the plaintiff, and that she had an agister's lien on Bradley's interest, which she was attempting to enforce at the time the horse was seized under the writ of attachment;

that T. C. Sharp was and is insolvent; that there was no consideration for the alleged transfer from him to the plaintiff of his interest in the horse, or for her alleged lien on Bradley's interest; and that, at the time the horse was attached, he was in a barn on the premises occupied by the plaintiff and her husband as a residence. The allegations of the answer were put in issue by a reply, and, the trial resulting in a judgment for plaintiff, the defendant appeals, assigning as error the overruling of his motion for a nonsuit, and the refusal to give certain instructions requested by him.

REVERSED.

For appellant there was a brief over the names of *W. C. Hale* and *H. D. Norton,* with an oral argument by *Mr. Hale.*

For respondent there was a brief over the names of *John M. Williams* and *L. F. Harris,* with an oral argument by *Mr. Williams.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. The motion for a nonsuit was based on the theory that the plaintiff failed to prove a cause sufficient to be submitted to the jury, and we think should have been sustained. The plaintiff claims title to an undivided third interest in the animal in controversy by purchase from her husband. She testified that such interest was transferred to her on the twenty-fifth of January, 1897, two days after the purchase from Hays, in consideration of money she had previously advanced to her husband for the payment of certain bills and expenses incurred by him. She gave evidence tending to support her claim, which, while far from clear or satisfactory, was perhaps sufficient to authorize a finding by the jury that she was the owner by purchase of her husband's undivided interest. But this alone would not entitle her to

recover possession of the animal, because replevin will not lie for an undivided interest in personal property: Shinn, Repl., § 206; Cobbey, Repl. (2 ed.), § 238; 20 Am. & Eng. Enc. Law (1 ed.), 1050; *Phipps* v. *Taylor,* 15 Or. 484 (16 Pac. 171); *Huffman* v. *Knight,* 36 Or. 581 (60 Pac. 207). Unless, therefore, she was entitled to possession as against the creditors of Bradley, the co-owner, she cannot prevail in this action, although she may be the owner of an undivided interest therein.

2. The interest of one tenant in common in personal property may be attached for his individual debt, and the officer may take all the property into his custody without being guilty of a conversion as to the other tenant's share. "This," says Mr. Freeman, "is merely one of the disagreeable incidents of their joint ownership. In no other way could the interest of the defendant be subject to execution; for an execution sale of chattels not in the possession of the sheriff, nor present at the sale, would invite their sacrifice, and could not be tolerated. Taking possession is not optional with the officer. He must take possession, or in some way subject the property to his control, in order to make a valid levy and sale": 2 Freeman, Ex'ns (3 ed.), § 254a. See, also, 1 Freeman, Ex'ns, § 125; Drake, Attachm. (6 ed.), § 248; *Waldman* v. *Broder,* 10 Cal. 378; *Bernal* v. *Hovious,* 17 Cal. 541 (79 Am. Dec. 147); *Veach* v. *Adams,* 51 Cal. 609; *Remmington* v. *Cady,* 10 Conn. 44; *Gaar* v. *Hurd,* 92 Ill. 315.

3. This brings us to the question of the validity of the plaintiff's alleged lien on Bradley's interest, for, unless she was entitled to hold possession as against him by reason of such lien, her action must fail. It seems from the testimony that the plaintiff's husband is a horse trainer, and that he and Bradley purchased Black Alder for the purpose of taking him around the country to the various race courses, and entering him for races; that Sharp, or the plaintiff, as she

contends, was to have charge of him for both parties, and to be allowed $20 a month for keeping and training him; that at the time of bringing the action she claimed a balance due for such services, and for freight, shoeing, entrance money, and jockey fees, of $410.72, and a lien on the horse therefor. This amount is made up of a charge of $20 a month for training and feed from January 23 to March 23, 1897, $30 a month from March 23 to November 23, 1897, and $20 a month from November 23, 1897, to March 23, 1898, besides other items mentioned. So it will be seen that the lien is claimed for feed from the time of the purchase by Sharp and Bradley, on the twenty-third of March, 1897, down to a few days before the attachment, without any statement as to whether such feed was furnished by the plaintiff or by other parties. It is well settled that, independently of the statute or special agreement, one who feeds or cares for an animal of another has no lien thereon for his charges, because he does not impart any new or added value to it, nor does he come within the policy of the law which gives innkeepers a lien on the baggage of their guests, because he is not bound to receive all animals that may be brought to him for keeping, but may refuse them if he sees fit, or impose such terms as he pleases: 1 Jones, Liens (2 ed.), § 641; 2 Am. & Eng. Enc. Law (2 ed.), 12.

4. We must therefore look to the statute to determine the question. Section 3684, Hill's Ann. Laws, provides that "any person who shall depasture or feed any horses, cattle, hogs, sheep, or other livestock, or bestow any labor, care, or attention upon the same at the request of the owner or lawful possessor thereof, shall have a lien upon such property for his just and reasonable charges for the labor, care, and attention he has bestowed, and the food he has furnished, and he may retain possession of such property until such charges be paid." Now, the manifest design of this provision is to give to a bailee of livestock, who depastures, feeds, or cares

for it, at the request of the owner or lawful possessor, a lien thereon for the food furnished or care bestowed by him, and the right to retain the possession until his charges are paid. To come within its purview, it would seem that the animal must belong to another; for one who feeds and cares for an animal of which he is a part owner cannot be said to have rendered the care and furnished the feed at the request of the owner or lawful possessor, and this is an essential ingredient of such a lien.

5. But, however this may be, the statute is intended to give a lien to one who, at the request of the owner or lawful possessor, shall feed, depasture, or bestow labor and care upon an animal the property of another, for such feed or labor furnished by him, but not when furnished by another, although he may have paid for the same. The plaintiff has manifestly not brought herself within the law. She or her husband had possession of the horse, as a part owner, for the use and benefit of themselves and their co-owner, Bradley, and the feed and care for which the lien is claimed were, in part, at least, necessarily furnished by other people at places where the horse was entered for races, who, under the statute, might have had an agister's lein.

6. The other items for which a lien is claimed, such as freight, entrance, and jockey fees paid, are clearly not lienable. The charges made by plaintiff or her husband against Bradley, and for which they claim a lien, arose in consequence of their joint ownership and joint adventure. For such expenses the statute gives no lien. Thus, in *Auld* v. *Travis,* 5 Colo. App. 535 (39 Pac. 357), it was held, under a statute substantially the same as ours, that one partner was not entitled to a lien upon the cattle of the partnership for food furnished by him, the court saying: "The lien is for food and care expended upon the cattle of another, where the cattle are intrusted to his care. They must be delivered into his possession and subject to his control, and the bail-

ment is such, and his possession so exclusive, that he may maintain trespass or trover against a wrongdoer for any injury to their possession." And, after reviewing the facts in the particular case, the court proceeds: "This brief statement shows the impossibilities of maintaining a lien where the requirements are—First, that the cattle should be the property of another, in which the agister had no rights of ownership; second, that the stock was delivered for the purposes of the agistment, under a contract of hire, with an agreement to pay for the food and care." So, also, in *Armitage* v. *Mace,* 96 N. Y. 538, where a mare was delivered to another, under an agreement by which he was to take her around the country to enter her for races, the owner to pay all expenses and the earnings to be divided, it was held that the expenses incurred for the board and shoeing of the animal while traveling with her did not give the possessor a lien under the statute.

7. The contention is made by the plaintiff that the property was in her possession at the time it was attached, that the defendant was guilty of trespass in taking it into his custody, and that she was therefore entitled to recover on that ground alone. The horse was in a barn, in the possession of the plaintiff and her husband, and within the curtilage of their dwelling house, when taken by defendant, and hence the presumption is that he was in the possession of the husband and was his property: 9 Am. & Eng. Enc. Law ( 1 ed.), 801 ; Stewart, Husb. & W., § 119. And this would probably be sufficient to support the attachment under the statute. But, whether it would or not, mere possession by the plaintiff would not be sufficient to entitle her to a return of the property, because her possession was that of her co-owner, Bradley, and, as we have seen, the sheriff, in attaching Bradley's interest, had a right to take the horse into his custody. It follows from these views that the judgment of the court below must be reversed, and the cause remanded, with directions to allow the motion for a nonsuit.            REVERSED.