**Beulah Arlene WOODRING, Plaintiff,**

v.

**JENNINGS STATE BANK, Defendant.**

**No. CV82–O–691.**

United States District Court,
D. Nebraska.

March 1, 1985.

P. Shawn McCann, Omaha, Neb., and John E. Dier, Holdredge, Neb., for plaintiff.

Stephen H. Nelsen, Lincoln, Neb., for defendant.

## MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

URBOM, Chief Judge.

The plaintiff and the defendant have filed motions for summary judgment, filings 26 and 24.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. All doubts are to be resolved against the moving party, and the non-moving party is to receive the benefit of all favorable inferences that reasonably may be drawn from the evidence. *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir.1943); *Ramsouer v. Midland Valley R. Co.*, 135 F.2d 101, 106 (8th Cir. 1943). Whether factual disputes are material depends upon what the applicable law shows to be relevant. In testing the sufficiency of a complaint to state a cause of action, the allegations of the complaint should be construed favorably to the pleader, and the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The pertinent uncontroverted facts, as established by the complaint, the pretrial order, and the evidence submitted by the defendant and not contradicted by the plaintiff's evidence, are as follows:

The plaintiff, Beulah Arlene Woodring, and her husband, Gary L. Woodring, are joint owners of a tract of land in Thayer County, ten contiguous lots of real estate in Davenport, Nebraska, and personal property located in a residence on the lots, including furniture, appliances, jewelry, and other property.

The defendant in this case, Jennings State Bank, filed a lawsuit against Gary Woodring in the District Court of Thayer County, Nebraska, on July 19, 1982, seeking judgment on five promissory notes exe-

cuted by Gary Woodring; Mrs. Woodring was neither a signatory on any of the notes nor a party to the state court lawsuit. On August 2, 1982, the bank filed a motion for attachment of the property of Gary Woodring. The same day the district judge signed an attachment order finding, in essence, that the bank had satisfied the requirements of the attachment statute, Neb. Rev.Stat. §§ 25–1001 et seq. (Cum.Supp. 1980)—a matter not disputed here—and ordering the Thayer County sheriff "to attach the real and personal property belonging to the defendant, Gary Woodring, as described in Exhibit 'A' attached hereto and incorporated herein by this reference and all other lands, tenements, goods, chattels, stocks or interest in stocks, rights, credits, money and effects in Thayer County not exempt by law as can be found by the Sheriff." Exhibit A—which also was attached to the bank's motion for attachment—lists the ten lots and tract of land that are mentioned above as jointly owned; furniture, appliances, jewelry, and miscellaneous household goods and personal effects, in general terms; and many other items, including another Davenport lot, furniture store inventory, tools and equipment, and several motor vehicles, none of which Mrs. Woodring claims to be jointly owned.

The sheriff carried out the attachment order on August 12 and 13, 1982, and filed an inventory and appraisement list on August 23, listing the real estate described in Exhibit A and a substantial amount of personal property, including many household items. Gary Woodring moved in state court to discharge the attachment. After an evidentiary hearing, the state court determined on October 25, 1982, that the attachment was proper. No evidence was presented at the hearing to show that any property of Mrs. Woodring had been attached. A pretrial conference was conducted on December 2, 1982, and a jury trial was set for December 14, 1982. However, Gary Woodring filed a suggestion in bankruptcy on December 15, 1982, resulting in a stay of the state proceedings. The property attached by the sheriff remains under the sheriff's control pursuant to the August 2, 1982, attachment order, except for certain records released by the district judge for use in the bankruptcy action.

Mrs. Woodring filed the action in this court on December 8, 1982; Mr. Woodring's voluntary petition in bankruptcy—to which the plaintiff is not a party—was filed December 13, 1982. No officer or employee of the defendant has received a demand from Mrs. Woodring to release property from the attachment order, and she did not advise the defendant of any specific personal property attached by the sheriff that she claims to own individually until her deposition on March 7, 1984, when she named a few items she said were hers alone. Nor did she take any action in state court to have the attachment order discharged or released with respect to property she claims to own individually, although she did ask the sheriff to allow her to take personal items and was told she could take nothing. Despite her mentioning individually owned property at her deposition, Mrs. Woodring has not raised in the complaint or in the pretrial order any issue other than attachment of jointly owned property, and she admits in the pretrial order that Gary Woodring had an ownership interest in the three pieces of real estate that were attached and in furniture, appliances, jewelry, and other miscellaneous property in the Davenport residence. There is no evidence that any officers of the bank believed at the time of the attachment that the jointly owned property belonged solely to Gary Woodring; further, the circumstances permit an inference that the bank officials knew or should have known that at least part of the property listed to be attached was owned jointly by the Woodrings.

Mrs. Woodring contends that the bank, by obtaining the attachment order, by not releasing it, and by failing to secure the property seized, has converted her interest in the property owned jointly and has violated her due process rights by employing the attachment procedures to deprive her of her property without notice or a hearing. It is uncontroverted that she did not re-

ceive notice or a hearing before the attachment order was entered.

With respect to the conversion claim, the defendant asserts that (1) a conversion claim lies only with respect to personal property; (2) the bank is not liable for conversion because it did not direct the sheriff to attach Mrs. Woodring's property and did not ratify any improper attachment; (3) attachment of jointly held property does not constitute conversion; and (4) the plaintiff is not entitled to maintain a conversion action because she never made demand for possession of her property. Concerning the due process claim, the defendant asserts that (1) the Nebraska prejudgment attachment statute is constitutional, but if it is not, (2) the bank is entitled as a matter of law to good-faith immunity because of its reliance on the state law.

### Conversion

The Nebraska Supreme Court has defined the tort of conversion as

> any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.... The "tort of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action." Prosser, Law of Torts, s. 15, at pp. 80, 81 (4th Ed., 1972). In Restatement, Torts 2d, s. 222A, 431, it is stated: "(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Therefore it can be seen that not all exercise of dominion over or interferences with the use of chattels constitute conversion.

Polley v. Shoemaker, 201 Neb. 91, 95, 266 N.W.2d 222, 225 (1978).

For example, the garnishment and sale of a wife's separately owned chattels in the possession of a warehouseman, without notice to the wife, in order to satisfy her husband's debt, renders the warehouseman and creditor liable to the wife for conversion. Sprague v. Allied Mills, Inc., 129 Neb. 394, 261 N.W. 892 (1935). Similarly, a sheriff who levies on the separate property of a wife under an execution against her husband is liable for resulting damages, and a judgment creditor who knowingly advises or ratifies an abuse of process resulting in a temporary wrongful seizure of personal property to satisfy the judgment is liable as a trespasser. Gilbert v. Rothe, 106 Neb. 549, 552, 184 N.W. 119, 121 (1921).

The plaintiffs to the writ of attachment are jointly liable with the attaching officer for abuse of process "if they direct the unlawful acts, or subsequently adopt or ratify them." Cole v. Edwards, 52 Neb. 711, 713, 72 N.W. 1045, 1046 (1897). In that case, a stranger to the underlying action claimed ownership of chattels after they were seized by the constable and demanded release of the levies. The plaintiffs to the writ refused, the goods were sold, and the proceeds were divided among the plaintiffs to the writ. The court held that even though the plaintiffs to the writ had not directed a levy on the property in controversy,

> before its sale they were notified of its ownership, and requested to release it, and they refused to do so. We have no doubt that this was an adoption and ratification of the constable's acts, and rendered them liable as trespassers ab initio. It is said that the goods were not then in possession of the creditors, but in that of the constable, and that, therefore, it was not in their power to comply with the demand. But the plaintiff has control of such a writ, and may require the officer to release his levy. To release the property of a stranger, which has been seized under a writ, does not even operate as a satisfaction. The creditor may require its release for his own pro-

tection without jeopardizing his judgment.... The writ was therefore within their control, and they are chargeable with the consequences of their refusal to exercise that control in favor of the rightful owner of the goods. Moreover, after so learning of plaintiff's claim to the goods, it is inferable that they became purchasers at the sale, and then appropriated the goods to their own use, by reselling. This would be a clear case of conversion.... Still further, it appears that, with knowledge of the true ownership, they received the proceeds of the sale. It has been held that this would be sufficient to charge them. *Hyde v. Cooper*, 26 Vt. 552. In the case cited the court distinguished between such a case and one where the plaintiff was ignorant of the true ownership, and also one where the officer had been guilty merely of a mistake of law, although the plaintiff had knowledge thereof.... [R]eception of the proceeds of a writ will not render the plaintiff thereto liable, when he was ignorant of the abuse of process.

*Id.* at 713–14, 72 N.W. at 1046–47.

■ On the other hand, refusal by the attaching plaintiff to return goods is not a ratification of the undirected seizure by the sheriff of a stranger's property where the owner merely demands possession but does not demand a release of the levy. *Omaha National Bank v. Robinson*, 56 Neb. 590, 77 N.W. 73 (1898).

■ In light of this authority, the present facts, when viewed most favorably to the plaintiff, demonstrate participation in or adoption of the levy by the bank, although not by a post-sale acceptance of the benefits in the face of knowledge of the adverse claim or by refusing a demand for the release of the levy. Here, the only demand that might have occurred was one made to the sheriff for delivery of some of the goods—not to the bank for release of the levy, but by more direct means. The levy was made on the basis on a two-page list of property purportedly belonging to Gary Woodring. Although the sheriff re-

ceived the list from the judge, the judge apparently had merely passed on the list supplied by the bank when it applied for the writ of attachment. The property list explicitly named the real property, and the household chattels were described with enough detail that the sheriff cannot be said to have gone beyond the list in levying against personal property now claimed to be jointly owned by Mrs. Woodring. If attachment of jointly held property as security for an action against only one of the joint owners was wrongful, then no demand was necessary because the bank was sufficiently involved in and knowledgeable of the levy against Mrs. Woodring's joint interest to be held liable for conversion. Although, here, demand upon the sheriff was ineffectual, no demand was needed to establish a ratification: the bank was a participant in the seizure from the start.

■ However, Nebraska law is clear that conversion lies only for serious interference with possessory interests in personal property, not real property. The reason is apparent in the attachment context from comparing the effects of the attachment on the different types of property: the sheriff takes custody of personal property, but for real property the sheriff merely leaves a copy of the attachment order with the occupant or in a conspicuous place. Neb.Rev.Stat. § 25–1008 (Reissue 1979). Thus, the owner is dispossessed of the personal property and may bring a conversion action for wrongful interference with her possessory interest, but her possessory interest in real property is not disturbed, although the attachment lien may be a burden on title interfering with her ability to convey the property.

The conversion issue, therefore, is reduced to one crucial issue: Is seizure of jointly held personal property to secure the debt of one joint owner a wrongful interference with the possessory interest of the other?

No Nebraska case accessible through legal digests has addressed the question of attachment, garnishment, or execution against jointly owned property. However,

the general common law rule is that the interest of a party in property held jointly with others is liable to attachment in an action against him, and an officer may take possession of the whole. 7 C.J.S. *Attachment* § 90 (1937); 6 Am.Jur.2d *Attachment & Garnishment* § 98 (1963); *e.g., Fisher v. Jacobs,* 39 Ill.App.2d 332, 188 N.E.2d 505, 508 (1963) (garnishment of joint bank account: "[A] creditor makes a *prima facie* case when he garnishes a joint account to which the judgment debtor is a party, and '[t]he burden is then upon the other party to the joint account to prove what part, if any, of the funds in such account belonged to him.' "); *Conolley v. Power,* 70 Cal.App. 70, 232 P. 744 (1924) (sheriff attaching hogs owned by debtor and plaintiff as tenants in common held not guilty of converting plaintiff's share merely for taking possession, but held guilty of conversion for making partition of the herd before selling—sheriff should have sold only debtor's undivided interest, and plaintiff was entitled to actual damages); *Quaranto v. Silverman,* 345 Mass. 423, 187 N.E.2d 859 (1963) (husband had no claim for abuse of process based on attachment of realty jointly owned with wife, even if attaching party had claim against only wife, especially where husband did not seek to discharge the attachment as it related to his interest); *State ex rel. Stevenson v. Hatch,* 41 Or.App. 609, 598 P.2d 1234 (1979) (check jointly owned by debtor and another may be attached, citing *Sharp v. Johnson,* 38 Or. 246, 249, 63 P. 485, 485 (1901) (attachment of one-third interest of one tenant in common in racehorse for his individual debt and seizure of entire horse was not conversion as to other tenant's share: " 'This ... is merely one of the disagreeable incidents of their joint ownership.' "); *cf. Frederick v. Shorman,* 259 Iowa 1050, 147 N.W.2d 478 (1966) (in execution upon judgment against one joint tenant of realty, levy and sale severs joint tenancy and purchaser becomes tenant in common with other co-owners).

 Therefore, attachment of the interest of one co-owner does not, without more, amount to a conversion of or trespass upon the interest of another co-owner. The conversion claim cannot stand.

### Due Process

The due process claim is based on the fact that Mrs. Woodring was not notified of the seizure of her property before the attachment was carried out or given a hearing on the lawfulness of the seizure. The defendant asserts that it is entitled to good faith immunity from liability for any constitutional violation that may have occurred and that the Nebraska prejudgment attachment statutes are constitutional.

 The constitutional requirement of due process, as secured by the Fourteenth Amendment, applies to garnishment and prejudgment attachment procedures whenever officers of the state act jointly with a creditor in securing the property in dispute; moreover, private use of challenged state procedures with the help of state officials constitutes state action under the fourteenth amendment, and that conduct also is action under color of state law such that suit may be brought against the private party under 42 U.S.C. § 1983. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 932–33, 935, 102 S.Ct. 2744, 2751–52, 2753, 73 L.Ed.2d 482 (1982). Conduct allegedly causing the deprivation of a federal right is "fairly attributable" to the state and therefore constitutes "state action" if (1) the deprivation is caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) the party charged with the deprivation is a person who may fairly be said to be a state actor, either because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state. *Id.* at 937, 102 S.Ct. at 2754. While private misuse of a state statute does not describe conduct attributable to the state, the procedural scheme for prejudgment attachment is a product of state action and the statutes may be challenged under § 1983 as viola-

tive of procedural due process. *Id.* at 941, 102 S.Ct. at 2756.

██ Here, the bank's invocation of state-created attachment procedures involving seizure of property by a state officer satisfies the "state action" requirement of *Lugar.* The pretrial order stipulates that the defendant followed the statutory procedure. As discussed above, it is permissible under the laws of the state to attach and seize jointly owned property to secure debts owed by only one of the co-owners. Therefore, the constitutional question presented is whether the procedural scheme adequately protects the property interests of the nonparty joint owner of the attached property.

██ The first question must address the nature of the property interest involved. The record is not clear as to the exact nature of the co-ownership of the attached property. However, the nature of both a joint tenancy and a tenancy in common is that the plaintiff and her husband each had the right to possess the whole and the possessory right of each was subject to the possessory right of the other. As discussed above, the nature of a joint estate is such that the possessory interest of one co-tenant is subject to temporary disruption when necessary to protect the rights of a creditor of another co-tenant. Because Mrs. Woodring's possessory interest arises from the state law defining her estate, she has no more substantive rights under the due process clause than she does under state property law. Any constitutional violation that may exist must be found in the procedural aspects of due process.

The defendant's brief analyzes this question from the perspective of the property owner who is a party to the suit in which the attachment occurs—in this case, Gary Woodring. However, the proper focus is upon the other owner, Mrs. Woodring.

The United States Court of Appeals for the Eighth Circuit in *Lewis Service Center, Inc. v. Mack Financial Corp.*, 696 F.2d 66, 68 (8th Cir.1982), has qualifiedly endorsed the guidelines set forth in *Aaron Ferer &*

*Sons Co. v. Berman,* 431 F.Supp. 847 (U.S. D.C.Neb.1977), for testing the constitutionality of prejudgment attachment procedure:

(1) The writ must issue only upon an affidavit containing facts. The affidavit must be by the creditor or his attorney who has personal knowledge of the facts.

(2) The writ must be issuable by a judge or at least involve judicial participation.

(3) The creditor must be required to indemnify the debtor from the risk and damages of a wrongful taking.

(4) The debtor must be able to dissolve the attachment by filing a bond.

(5) The debtor must be afforded an immediate post-seizure hearing wherein the creditor shall have to prove the grounds upon which the writ was issued.

*Id.* at 852. The Eighth Circuit noted that an "early" hearing is needed, rather than an immediate one, and the requirements that the creditor post a bond to obtain the order and that the debtor be allowed to post a bond to dissolve it are unnecessary if the debtor is allowed to retain possession pending the provision of a prompt hearing. 696 F.2d at 69. The same test, adjusted to account for the fact that the plaintiff is not the debtor who was the intended subject of the state lawsuit, would be helpful on the present question.

Neb.Rev.Stat. § 25–1002 (Cum.Supp. 1982) (amended eff. July 1, 1985), required that an order of attachment be approved by a judge after presentation of affidavits based upon personal knowledge that the petition: state a valid cause of action and the amount the plaintiff is entitled to recover is true; describe the existence and approximate value of any of the defendant's property known to the plaintiff to be subject to the jurisdiction of the court; and state "specific facts demonstrating reasonable cause" that one or more of the statutory grounds for attachment exists.

Neb.Rev.Stat. § 25–1003 (Cum.Supp. 1984) requires the judge "to determine the amount of the undertaking the plaintiff

shall be required to file," taking into account the "probable damage that will be suffered by the defendant if his or her property is wrongfully attached" and the value of the defendant's property as described in the plaintiff's affidavits, and to "direct the clerk to issue, after the necessary bond is filed, an order of attachment." (Although the attachment order issued by the state court did not provide for a bond, the judge having found that the bank would be able to reimburse the defendant without the need for sureties, the issue of violation of the attachment statutes was stricken by the magistrate from the list of controverted issues because of failure to disclose the issue in answers to interrogatories, see Memorandum and Order of Nov. 29, 1984, filing 21. However, the question of compliance with the statute requiring an undertaking to the defendant in the state court action is not determinative of the present question addressing the adequacy of the protection accorded a nonparty co-owner.)

Neb.Rev.Stat. § 25–1024 (Cum.Supp. 1984) allows the defendant, or any other person on his or her behalf, to obtain discharge of the attachment and restitution of the attached property by executing an undertaking to the plaintiff to the effect that the defendant shall perform the judgment of the court. Neb.Rev.Stat. § 1040 (Reissue 1979) allows the defendant to move to discharge an attachment as to all or part of the property attached at any time before judgment, and § 1041 (Cum.Supp.1984) requires the judge to discharge the order unless the plaintiff proves by a preponderance of the evidence one of the alleged statutory grounds for attachment.

Whether or not these statutes fulfill the *Aaron Ferer* criteria as to a debtor who is the defendant in the state court suit, they fall short of protecting nonparty co-owners. The first two criteria, concerning affidavits and judicial participation, are satisfied, but the third and fourth clearly fail because the bond required of the attachment plaintiff is designed to protect the defendant against loss for wrongful attachment and it is the defendant who has the right to discharge the attachment and recover his property by filing a bond; nonparty claimants are simply not contemplated by this part of the statutory scheme.

As to the fifth element—the right to a prompt post-seizure hearing to test the grounds for attachment—again, it is the defendant debtor who is entitled to a hearing on the grounds for attachment. A third person claiming an interest in or lien upon the attached property cannot intervene in the attachment suit to question the grounds for issuance of the writ or the validity of the underlying claim, either under the attachment provisions or the general intervention statute, Neb.Rev.Stat. § 25–328 (Reissue 1979), *Drainage District No. 1 of Lincoln County v. Kirkpatrick-Pettis Co.*, 140 Neb. 530, 300 N.W. 582 (1941). Nor may a third party who claims ownership of attached property intervene to have the question of ownership determined in the attachment suit. *Geis v. Geis*, 125 Neb. 394, 250 N.W. 252 (1933). The only attachment statute recognizing the interests of third parties is § 25–1036 (Reissue 1979):

> If personal property which has been attached be claimed by any person other than the defendant, it shall be the duty of the officer to have the validity of such claim tried, and such proceedings must be had thereon, with the like effect, as in case the property had been seized upon execution and claimed by a third person.

The relevant execution statutes, §§ 25–1521 to –1523 (Reissue 1979), impose on the officer a duty "forthwith" to give notice to the court that he has levied on goods and chattels claimed by a person other than the defendant and the court has the duty "immediately upon the receipt of such notice" and property schedule to enter the matter on the docket and determine the right of the claimant to the property; if the court finds the right to the goods and chattels to be in the claimant, then the claimant is entitled to restitution of the property and recovery of costs against the plaintiff in execution. Thus, the nonparty claimant's ability to recover prompt relief from the

seizure is dependent upon the officer's compliance with his duty to present the intervening claim to the court for determination, and even this is limited to personal property. Whatever cloud the attachment may effect on the nonparty's title to real property apparently cannot be cleared until after judgment and execution in the original suit, because the nonparty claimant cannot intervene and is not bound by the results of the suit.

Here, the plaintiff stated in her deposition that she did make a demand upon the sheriff for return of some of the seized personal property but this was refused. Apparently, the sheriff did not inform the state court of the demand to allow a judicial determination of Mrs. Woodring's right to the property. However, given the allegation that all attached property is jointly owned by the Woodrings and the rule of law that jointly owned property may be seized to secure the separate liability of one co-owner, no hearing and determination of title, either under § 25–1036 or as a result of her direct intervention in the original suit, would have gained for Mrs. Woodring any relief from the seizure. Her property interest is not one that entitles her to possession of the jointly owned property as against the sheriff acting under an attachment order.

 Even though there may have been no prejudice to Mrs. Woodring from denying her an opportunity to establish her ownership interest, a question remains about whether due process requires that a nonparty co-owner have an independent right to challenge the grounds for the attachment in an immediate hearing, an opportunity denied nonparty claimants under Nebraska law. Due process certainly requires that the attachment defendant have such a right. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Guzman v. Western State Bank of Devils Lake*, 516 F.2d 125 (8th Cir.1975). Logic dictates, and no authority contradicts, a similar right in a non-party owner to obtain an immediate hearing to test whether the allegations supporting the deprivation of her property are supported by fact. The fact that the debtor possesses a right to challenge the grounds for the attachment order does not mean that the co-owner has no such right; were the rule otherwise, the nonparty co-owner would have no opportunity to challenge the grounds for the attachment should the debtor, for some reason, fail to exercise his statutory right to a discharge hearing. Mrs. Woodring's interest in the property entitles her to its exclusive possession as against all the world except her husband, and the seizure pursuant to the attachment order, although temporary, deprives her of her possessory interest and triggers the due process restraints outlined in *Fuentes* and *North Georgia Finishing*, as measured under the *Aaron Ferer* criteria. The provision of protection from unreasonable deprivation of Mr. Woodring's possessory interest does not discharge the state's obligation to protect Mrs. Woodring's possessory interest.

 It follows that Mr. Woodring's exercise of his statutory right to a discharge hearing did not dissolve his wife's due process right to similar protection, even though the factual issues may be the same. She was not a party to the state proceeding and, with respect to their separate possessory interests in the attached property, the spouse cannot be said to have been in privity.

 Therefore, viewing the record most favorably for the plaintiff, the final three criteria of *Aaron Ferer*, concerning a bond by the attachment plaintiff for the benefit of the nonparty co-owner, discharge of the attachment upon posting of a bond by the nonparty co-owner, and co-owner's entitlement to a hearing to challenge the grounds for attachment, were not satisfied and the bank's invocation of the Nebraska attachment mechanism deprived the plaintiff of property rights without due process of law.

**1070**

### Good Faith Immunity

 Finally, the bank argues that even though there may have been a constitutional violation, it is entitled to good faith immunity from liability for damages.

In the course of holding that private individuals could be liable under 42 U.S.C. § 1983 when they invoke state attachment procedures involving the participation of state officers, the Supreme Court suggested in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2757 n. 23, 73 L.Ed.2d 482 (1982), that the concern about holding responsible "private individuals who innocently make use of seemingly valid state laws ..., if the law is subsequently held to be unconstitutional [sic] ... should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense. A similar concern is at least partially responsible for the availability of a good-faith defense, or qualified immunity, to state officials." The Eighth Circuit heeded this suggestion in *Buller v. Buechler*, 706 F.2d 844 (8th Cir.1983), by recognizing a qualified immunity patterned on that applying to government officials:

> [W]e conclude that in enacting section 1983 Congress did not intend to subject to liability private individuals who in good faith resorted to state garnishment or prejudgment attachment procedures....
>
> In *Harlow v. Fitzgerald*, [457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)], the Supreme Court ... articulated its qualified immunity test: a good faith defense will be defeated if the defendant's conduct violated a clearly established statutory or constitutional right of which he or she knew or should have known. *Id.* [at 818, 102 S.Ct. at 2738]; *id.* [at 821, 102 S.Ct. at 2740] (Brennan, J., concurring). If the law at the time of the defendant's conduct was not clearly established, he or she could not reasonably be expected to anticipate subsequent developments, nor could he or she be fairly said to "know" that the law proscribed conduct not previously identified as unlawful. *Id.*

*Id.* at 852. The court remanded the immunity question because the South Dakota garnishment law involved in the case was declared unconstitutional prior to, rather than subsequent to, the defendants' invocation of the statute's procedures, and that fact "obviously is extremely important to the determination of whether the defendants here acted in good faith." *Id.*

As is apparent in my discussion finding that the Nebraska prejudgment attachment laws are violative of the due process rights of nonparty co-owners of attached property, that holding was based upon the general principles for testing prejudgment seizure laws against the due process clause, as adapted for application in the non-party claimant situation, rather than upon specific precedent on that point. This was because I was unable to find authority on how the due process standards apply in the nonparty situation, and the parties cited none. Additionally, a key premise for my constitutional ruling, that jointly held property is subject to attachment and seizure to secure the debts of only one of the co-owners, had not been spelled out in any reported Nebraska decision, or at least none discoverable through the normal means of legal research. While it may be that the due process rights of a defendant in an attachment action to notice and a prompt hearing on the grounds for the seizure were clearly established by the time the bank invoked the Nebraska attachment procedure, it cannot be said that the right of a nonparty co-owner to separate due process protection was clearly established in this jurisdiction until today.

Therefore, under *Buller,* the bank is entitled to qualified immunity from liability because it reasonably could not have known it was violating Mrs. Woodring's constitutional rights. Because the plaintiff seeks only monetary relief, the controversy ends here with the granting of the defendant's motion for summary judgment.