**Maria RUSCITTI, Plaintiff–Appellant,**

v.

**Gilbert M. SACKHEIM and Day and Sackheim, Defendants–Appellees.**

**No. 90CA0846.**

Colorado Court of Appeals, Div. II.

Aug. 29, 1991.

Jack Kintzele, Denver, for plaintiff-appellant.

Robert C. Clarke, Boulder, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiff, Maria Ruscitti, appeals the summary judgment entered in favor of defendants, Gilbert M. Sackheim and Day and Sackheim (a law partnership), upon Ruscitti's claims for conversion, outrageous conduct, and deprivation of property in violation of 42 U.S.C. § 1983 (1988). We affirm.

The relevant facts are undisputed. Sackheim, an attorney and a principal of the law firm of Day and Sackheim, represented Carl Nukols in a civil action against Emiliano and Linda Ruscitti, the husband and daughter of plaintiff Maria Ruscitti. In September 1987, Sackheim obtained a $35,156 default judgment for Nukols against Emiliano and Linda Ruscitti. Thereafter, Sackheim began execution proceedings on Nukol's behalf.

Sackheim then discovered the following: (1) Emiliano Ruscitti operated a grocery store known as the Sunrise Market; (2) since 1985, Emiliano Ruscitti has been listed on a Colorado Department of Revenue trade name registration as sole owner of this business; and (3) as sole owner, Emiliano Ruscitti applied for and received a sales tax license and alcoholic beverage license for the Sunrise Market which license was current in 1988.

In reliance upon this information, Sackheim caused a writ of execution to be issued, and on November 12, 1988, approximately $3,300 was seized by the sheriff from the Sunrise Market's cash registers.

Following the seizure, Maria Ruscitti filed this action for conversion, outrageous conduct, and violation of her property rights under 42 U.S.C. § 1983. She claims that she has a co-ownership interest in the Sunrise market and also claims damages caused by seizure of her share of the property from the cash registers.

Defendants moved for summary judgment, contending that Maria Ruscitti had no demonstrable ownership rights in the property and, therefore, could not be a victim of conversion. In response to defendants' motion for summary judgment, Ruscitti filed documentation which, the trial court found, did raise a genuine issue of fact as to whether she indeed was a co-owner of the Sunrise Market.

Nevertheless, despite the existence of that factual issue, the court determined that summary judgment for defendants was proper since the seizure was conducted pursuant to a valid judgment and execu-

tion. The trial court also entered summary judgment against Ruscitti on her claims of outrageous conduct and violation of 42 U.S.C. § 1983.

## I.

Ruscitti's main contention on appeal is that since the trial court found a genuine issue of fact as to her co-ownership of the Sunrise Market, entry of summary judgment was improper. We disagree.

The purpose of summary judgment is to permit parties to pierce the formal allegations of the pleadings and to save the time and expense connected with the trial. Summary judgment is a drastic remedy and may properly be entered only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District,* 689 P.2d 594 (Colo.1984).

In determining whether summary judgment is proper, the trial court must resolve all doubts against the moving party. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

Once the party moving for summary judgment has met the initial burden, the burden shifts to the non-moving party to establish that there is a triable issue of fact. *Continental Air Lines v. Keenan,* 731 P.2d 708 (Colo.1987). Further, the non-moving party must demonstrate that a real controversy exists.

Here, the trial court found that even if Ruscitti was a co-owner of the market, she could not recover because defendants' conduct did not constitute conversion as a matter of law. Thus, the issue of fact was immaterial.

## II.

Section 13–52–102(1), C.R.S. (1987 Repl. Vol. 6A) states that:

"all goods and chattels ... of every person against whom any judgment is obtained ... are liable to be sold on execution...."

■ Personal property not owned by the judgment debtor is not subject to execution to satisfy the judgment. *See Brink v. McNeil,* 761 P.2d 271 (Colo.App.1988).

■ Section 13–55–102, C.R.S. (1987 Repl.Vol. 6A) gives a judgment debtor the right to a prompt hearing after execution to determine the validity and effect of any claimed exemptions. A person who claims to be the owner of seized property but who is not the judgment debtor may intervene in the proceeding and have his or her exemption claims determined promptly by the court. *Cf. Brink v. McNeil, supra.*

In sum, the statutory scheme which allows levy or seizure of personal property under a writ of execution also prevents undue interference with personal property by making available a prompt judicial hearing to determine claimed exemptions. Ruscitti did not avail herself of the remedy afforded by § 13–55–102.

The essence of Ruscitti's argument is that since her interest in the Sunrise Market could not be used to satisfy her husband's judgment creditor absent a statute creating liability, Sackheim's actions constituted conversion. In response, Sackheim contends that since all of his actions were lawful, they could not constitute conversion.

Although no reported Colorado case has faced this exact issue, other states have held that the seizure of jointly held personal property to secure the debt of one joint owner pursuant to a lawful writ of execution does not in itself constitute conversion.

In *Woodring v. Jennings State Bank,* 603 F.Supp. 1060 (D.Neb.1985), a federal district court, interpreting Nebraska law, noted that conversion lies only for serious interference with possessory interests in personal property; thus, it held that the attachment of one owner's interest was not conversion as to the other owner's interest. Rather, as an Oregon court stated, it "is merely one of the disagreeable incidents of their joint ownership." *Sharp v. Johnson,* 38 Or. 246, 249, 63 P. 485 (1901). *Accord Conolley v. Power,* 70 Cal.App. 70, 232 P. 744 (1924); *Quaranto v. Silverman,* 345 Mass. 423, 187 N.E.2d 859 (1963); *Commercial Credit Equipment Corp. v. Peo-*

*ple's Loan Service, Inc.*, 351 So.2d 852 (La.App.1977). *See generally* W. Prosser, *Law of Torts* § 15 (4th Ed.1972).

We are persuaded by the reasoning of these jurisdictions and adopt the same rule.

We, therefore, hold that the seizure of jointly held personal property to secure the debt of one joint owner pursuant to a writ of attachment or execution, *without more,* does not, as a matter of law, constitute conversion.

Here, it is undisputed that Sackheim obtained a valid judgment against Emiliano Ruscitti, that Sackheim's actions were taken pursuant to a valid writ of execution, and that the property seized was subject to execution pursuant to § 13–52–102(1), C.R.S. (1987 Repl.Vol. 6A). The court further found that: (1) all public documents showed Emiliano was sole owner of the business; (2) the writ of execution was properly executed by the sheriff; (3) after the seizure occurred on November 12, 1988, Maria Ruscitti did not file a claim for exemption pursuant to § 13–55–102, C.R.S.; and (4) the money seized was returned to her on December 1, 1988, after Emiliano posted a bond.

Thus, here, the trial court correctly ruled that Ruscitti's alleged co-ownership interest in the Sunrise Market was immaterial because, even if it did exist, Sackheim's actions did not constitute conversion as a matter of law.

Accordingly, the trial court did not err in granting defendant's summary judgment on the conversion claim.

### III.

In view of our ruling that there was no conversion, it follows that the plaintiff also failed to state a claim for outrageous conduct. *See Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970); *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo. App.1982).

### IV.

42 U.S.C. § 1983 provides a remedy for deprivation of rights secured by federal law if that deprivation takes place under color of any statute or usage of any state. *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). And, state action may occur if the defendants use state legal proceedings so as to allow state officials to attach property on an unconstitutional basis. *Lugar v. Edmonson Oil Co., supra.*

Here, however, Ruscitti does not allege that the judgment underlying the attachment was unconstitutionally obtained or that the statutory attachment proceeding is unconstitutional. Nor does she claim that the state refused her the opportunity to contest the seizure and sale of her property. *See Hannan v. Connett,* 10 Colo. App. 171, 50 P. 214 (1897); *see also* C.R.C.P. 104 and § 13–54–102, C.R.S. (1987 Repl.Vol. 6A). Therefore, the trial court properly entered judgment against her on this claim. *See Schroder v. Volcker,* 646 F.Supp. 132 (D.Colo.1986), *aff'd,* 864 F.2d 97 (10th Cir.1988).

We find Ruscitti's other contentions to be without merit.

The judgment is affirmed.

SMITH and METZGER, JJ., concur.